J-A28029-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MAURICE A. DAVIS, JR. | : | |
| | : | |
| Appellant | : | No. 172 WDA 2020 |

Appeal from the PCRA Order Entered January 2, 2020
In the Court of Common Pleas of Cambria County Criminal Division at
No(s): CP-11-CR-0000582-2014

BEFORE: OLSON, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY MURRAY, J.:                    FILED DECEMBER 29, 2020

Maurice A. Davis, Jr. (Appellant) appeals from the order denying his first petition filed pursuant to the Post Conviction Relief Act (PCRA). See 42 Pa.C.S.A. §§ 9541-9546. Appellant contends that his trial counsel was constitutionally ineffective in connection with plea negotiations. Upon review, we disagree and affirm.

In January 2014, while Appellant was caring for a 1½ year-old child, the child suffered serious injuries that were consistent with assaultive trauma.[1]

_____

[1] The child had been healthy prior to this incident. However, she now will suffer from severe maladies for the rest of her life, including the inability to walk unassisted, engage in verbal communication, and eat without a feeding tube. See Commonwealth v. Davis, 160 A.3d 264 (Pa. Super. 2017) (unpublished memorandum at 8) (Davis I).

Appellant claimed the child fell down the stairs. However, in April 2014, the Commonwealth charged Appellant with two counts each of aggravated assault (AA) and simple assault (SA), and one count of endangering the welfare of children (EWOC). See 18 Pa.C.S.A. §§ 2702(a)(1), 2701(a)(1), 4304(a)(1).[2]

Pertinently, the Commonwealth and Appellant engaged in pre-trial plea bargain negotiations. Appellant was represented by Jerome Kaharick, Esquire (trial counsel). At a pre-trial conference on September 28, 2015, the prosecutor stated that Appellant had been offered a particular plea bargain, which would remain valid for one day. See N.T., 9/28/15, at 5-6. The prosecutor also explained that if Appellant did not accept the deal, the Commonwealth would seek imposition of the statutory maximum, aggregate sentence of 20 to 40 years in prison. See id. at 6-7. The trial court conducted an oral colloquy of Appellant to determine whether he understood the terms and conditions of the plea offer. Id. at 8-9. The court detailed, inter alia, the potential sentence Appellant could face. Id. at 8. Appellant did not accept the plea deal prior to its expiration.

The case proceeded to a jury trial on October 5, 2015. Prior to jury selection, the parties discussed a second plea offer from the Commonwealth;

_____

[2] The trial court later granted the Commonwealth leave to amend the information. The original two AA counts were substituted with two counts of AA at 18 Pa.C.S.A. § 2702(a)(8), and the two SA counts were replaced with an additional count of AA at 18 Pa.C.S.A. § 2702(a)(9). The EWOC charge did not change.

they also detailed the potential sentences Appellant could face if he did not accept the offer. See N.T., 10/5/15, at 6-7. Appellant again rejected the offer and trial began, at the close of which the jury found Appellant guilty of all counts.

On November 3, 2015, the trial court initially sentenced Appellant, but soon discovered there had been an error in calculating Appellant's offense gravity score (OGS). Six days later, the trial court resentenced Appellant, using the correct OGS, to an aggregate term of 225 to 450 months in prison.[3] This Court affirmed the judgment of sentence in January 2017, after which the Supreme Court of Pennsylvania denied allowance of appeal. See Davis I, 160 A.3d 264, appeal denied, 169 A.3d 1079 (Pa. 2017).

On October 26, 2018, Appellant timely filed a first, counseled PCRA petition, asserting trial counsel was ineffective in connection with the plea negotiations and failing to adequately counsel Appellant. The PCRA court conducted two PCRA evidentiary hearings on the petition, where trial counsel and Appellant were questioned by Appellant's PCRA counsel and the Commonwealth. By order entered January 2, 2020, the PCRA court denied Appellant's petition. Appellant timely filed a notice of appeal, followed by a

_____

[3] The Davis I panel explained the matter of Appellant's OGS and the sentencing proceedings in its memorandum. See Davis I, 160 A.3d 264 (Pa. Super. 2017) (unpublished memorandum at 2).

- 3 -

court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the PCRA court issued an opinion.

Appellant presents three issues for our review:

1. Did the PCRA court erred [sic] by concluding that trial counsel did not render ineffective assistance[?]

2. Did the PCRA court err by concluding that trial counsel's concern regarding the discoverability of the report of a defense consultant who [was] not called to testify at trial was valid?

3. Did the PCRA court err by using the standard and analysis for a claim of ineffectiveness for failure to call an expert witness at trial[?]

Appellant's Brief at 6.

We are mindful of our standard of review:

Appellate review of a PCRA court's dismissal of a PCRA petition is limited to the examination of whether the PCRA court's determination is supported by the record and free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding. In contrast, we review the PCRA court's legal conclusions de novo.

Commonwealth v. Maxwell, 232 A.3d 739, 744 (Pa. Super. 2020) (en banc) (citations and quotation marks omitted). Further, a "PCRA court's credibility findings are to be accorded great deference, and where supported by the record, such determinations are binding on a reviewing court." Commonwealth v. Williams, 141 A.3d 440, 452 (Pa. 2016).

In order for a PCRA petitioner to be entitled to relief on an ineffectiveness claim, he must establish:

- 4 -

(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. Commonwealth v. Chmiel, 612 Pa. 333, 30 A.3d 1111, 1127 (Pa. 2011) (employing ineffective assistance of counsel test from Commonwealth v. Pierce, 515 Pa. 153, 527 A.2d 973, 975-76 (Pa. 1987)). Counsel is presumed to have rendered effective assistance. Additionally, counsel cannot be deemed ineffective for failing to raise a meritless claim. Finally, because a PCRA petitioner must establish all the Pierce prongs to be entitled to relief, we are not required to analyze the elements of an ineffectiveness claim in any specific order; thus, if a claim fails under any required element, we may dismiss the claim on that basis.

Commonwealth v. Treiber, 121 A.3d 435, 445 (Pa. 2015) (some internal citations omitted).

Here, Appellant alleges that trial counsel was ineffective in connection with advice given during plea negotiations. Our Supreme Court has explained:

Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused [the defendant] to enter an involuntary or unknowing plea. In determining whether a guilty plea was entered knowingly and intelligently, a reviewing court must review all of the circumstances surrounding the entry of that plea.

Commonwealth v. Allen, 732 A.2d 582, 587 (Pa. 1999) (citations omitted).

Further, a PCRA petitioner seeking relief on the basis that ineffective assistance of counsel caused him to reject a guilty plea must demonstrate:

[B]ut for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms

- 5 -

would have been less severe than under the judgment and sentence that in fact were imposed.

Commonwealth v. Steckley, 128 A.3d 826, 832 (Pa. Super. 2015) (quoting Lafler v. Cooper, 566 U.S. 156, 164 (2012)).

In his first issue, Appellant argues that trial counsel rendered ineffective assistance by failing to apprise Appellant of the potential sentences he could face, and incorrectly advising him of the applicable sentencing guidelines ranges. See Appellant's Brief at 13-19.[4] Appellant contends:

> Before he was sentenced, [he] was operating under the belief that he was facing 4.5 to 9 years of incarceration, at the bottom of the standard range, and a sentence of 6 to 12 years of incarceration at the top of the standard range. If [Appellant] had been represented by effective counsel, he would have been made aware of the fact that the standard range sentence he faced if convicted was 6 to 12 years at the bottom of the standard range and 7.5 to 15 years at the top of the standard range. [Appellant] proceeded to trial under the misinformed belief that the standard range sentence was 1.5 to 3 years shorter at the bottom, and 3 to 6 years shorter at the top of the standard range of the sentencing guidelines. [Appellant] testified that trial counsel told him the worst sentence he was likely to face if he was convicted at trial was 66-84 months.

Appellant's Brief at 16-17. Appellant argues it "cannot be said that [his] rejection of the plea offer was done intelligently if it was done under an incorrect understanding of the sentencing guidelines." Id. at 19.

---

[4] We note that Appellant's argument section does not comply with Pa.R.A.P. 2119(a) (the "argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."). We overlook this defect, but caution counsel going forward.

The PCRA court detailed its determination that there was no merit to this claim of ineffectiveness:

[Appellant] testified [at the PCRA hearing], "when [the Commonwealth] called for a status conference and offered me 54 to 72 months with one day to accept. At that time trial counsel told me not to accept, because I was only a three [prior record score] on the scale, and I was only facing 66 to 84 months, which is that sentence aggregated. . . . So I didn't accept it." N.T., 4/30/19, at 9.

Even if trial counsel did not inform [Appellant] about the potential sentence he would face prior to trial, the trial court did. At a status conference on September 28, 2015, the trial court engaged in a colloquy with [Appellant] regarding the plea offer and the potential consequences he could face if he went to trial:

Q. [THE COURT:] So [Appellant], the guidelines on the top count that [the Commonwealth has] offered are 54 to 72 months in the event your prior record score is a three, and 60 to 78 months in the event your prior record score is a four. In the event the Commonwealth goes to trial and they obtain a conviction on all of the counts against you, they will request consecutive sentences for the statutory maximum of 20 to 40 years on each of Counts 1 and 2, which is within the court's discretion, but that's what they will ask for; and you are advised that the guidelines on each of Counts 1 and 2 in the charges as amended are 66 months to 84 months. So that means that this court can sentence in that range on the low end of your standard range. So, first of all, do you understand the plea bargain and what's been offered by the Commonwealth to you?

A.: Yes, Your Honor, I do.

Q.: Have you had sufficient time to consult with [trial counsel] regarding this matter?

A.: Yes.

- 7 -

Q.: Do you have any questions of either the court, your counsel, or the Commonwealth today regarding the offer that is on the table?

A.: No, I have no questions.

N.T., 9/28/15, at 8-9. And finally, [Appellant] was informed again of the sentence he could potentially face during jury selection, but [Appellant] continued to reject the plea bargains offered by the Commonwealth. N.T., 10/5/15, at 6-11; N.T., 8/20/19, at 41-42, 44-46.

There is ample evidence that trial counsel, the Commonwealth, and the trial court all discussed the plea bargain and the potential range of sentences with [Appellant] on multiple occasions. [Appellant] rejected the plea offer each time, even after trial counsel and family members advised him to accept. See [N.T., 4/30/19, at 59]. [Appellant] repeatedly confirmed his understanding of the standard range of sentences and the maximum punishment he could receive. This court is unpersuaded by [Appellant's] claims that he believed an allegedly lower range of sentence [was] provided by trial counsel despite conflicting information by the trial judge. See, e.g., id. at 17-18, 20-21, 36, 37-38. [Appellant's] claim that he would have accepted the bargain but for the actions of trial counsel is completely contradicted by the evidence.

PCRA Court Opinion, 1/2/20, at 10-11 (emphasis in original, brackets omitted, citations modified). Our review discloses that the PCRA court's analysis is supported by the record; we further agree with its conclusion that Appellant failed to establish that trial counsel was ineffective in this regard. Appellant's first issue is thus meritless.

In his second issue, Appellant contends that trial counsel was ineffective because he failed to consult with a medical expert prior to engaging in plea negotiations and discussions with Appellant. See Appellant's Brief at 20-24. Appellant avers trial counsel's "personal knowledge of the medical evidence in

the case was so limited as to render him unqualified to render an opinion."
Id. at 20; see also id. at 21 (asserting that at the PCRA hearing, "trial counsel
could not identify the clinical features that indicate that a diagnosis of 'shaken
baby syndrome' was invalid.").

For context, the following excerpt from the first PCRA evidentiary
hearing is relevant to this claim:

> Q. [Appellant's PCRA counsel]: Did you ever discuss consulting
> with or hiring an expert with [Appellant]?
>
> A. [Trial Counsel]: There was some discussion of that. I don't
> know when it occurred, but there was some discussion.
>
> Q.: Ultimately, clearly, a discussion was made to not consult with
> a medical expert?
>
> A.: Correct.
>
> Q.: Who made that decision?
>
> A.: Well, I believe it was a joint decision. [Appellant] never had
> any concern about the medical expert or the testimony because
> his mind was convinced and he confirmed many times that I am
> not guilty, I did not do this, and there is just no way I committed
> this crime.
>
> Q.: Wouldn't it make sense to get an expert to confirm what your
> client was saying?
>
> A.: Well, the evaluation would go something like this[:] if you
> consult with an expert and that expert says there's no way in
> Hades that this could be anything but shaken baby syndrome and
> you have a report, the Commonwealth will ask for that report and,
> then, you have your own expert telling the Commonweaalth it is
> shaken baby syndrome.

N.T., 4/20/19, at 20-21.

Further, at the second PCRA hearing, the following exchange occurred

between Appellant and PCRA counsel:

Q.: Were there any x-rays or anything in there[, i.e., the discovery packet materials regarding the victim's injuries,] that you saw?

A.: Not that I remember.

Q.: Okay. To your recollection, did [trial counsel] ever talk to you about talking to a doctor about the medical evidence?

A.: No. The only thing I remember him saying about a doctor, I guess there was a doctor on the other end of the case, his name was Dr. Rodriguez, and he said all of [the victim's] injuries did consist with a fall down the stairs. But then that's when [the Commonwealth] decided not to use that doctor, and that's when the Pittsburgh doctors came into play with them. Other than that, [trial counsel] never discussed any doctors with me.

Q.: Okay. With this Dr. Rodriguez, did [trial counsel] ever talk about calling that witness as a defense witness?

A.: No.

Q.: . . . Did [trial counsel] ever tell you that he spoke with Dr. Rodriguez?

A.: No.

Q.: Okay. So you said that [trial counsel] told you that you didn't need to have the doctor?

A.: Yes.

Q.: Did he say why?

A.: No. He just said I don't need one.

Q.: Okay. And did he discuss what the defense strategy was at any point with you?

A.: No.

Q.: Did he discuss what his plans were with dealing with the doctor that the Commonwealth was planning on calling to testify?

A.: No.

N.T., 4/30/19, at 11-13.

Again, the PCRA court determined that Appellant's claim failed to meet all three prongs of the ineffectiveness test:

Appellant failed to prove that the underlying legal issue (i.e., that trial counsel was ineffective for failing to consult an expert witness) has arguable merit. Appellant failed to assert that an expert witness was available and willing to testify or that trial counsel knew or should have known about an expert witness. Appellant made only unsubstantiated claims about a "Dr. Rodriguez," who may or may not have rendered an opinion about the victim's injuries being consistent with a fall down the stairs. Appellant also failed to prove that the uncalled witness testimony would have been beneficial under the circumstances of the case; accordingly, there is no evidence of prejudice . . . .

Even assuming, arguendo, that Appellant's claim had arguable merit, Appellant failed to satisfy the second and third prongs of the ineffective assistance test, supra. Appellant failed to demonstrate that trial counsel's actions lacked any reasonable

basis[,[5]] and that they resulted in prejudice to Appellant. Trial counsel expressed legitimate concern about hiring a potential expert who would confirm the Commonwealth's shaken baby syndrome theory. Trial counsel also clearly rejected the notion that medical evidence would have convinced Appellant to accept a plea, citing Appellant's consistent and adamant claims of innocence.[6] Therefore, Appellant's claim that trial counsel was ineffective by failing to consult with a medical expert fails.

PCRA Court Opinion, 4/20/20, at 9 (footnotes added).

_____

[5] Appellant concedes that "trial counsel identified a defense strategy[.]" Appellant's Brief at 20. In this regard, our Pennsylvania Supreme Court has stated:

> Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.

Commonwealth v. Spotz, 84 A.3d 294, 311 (Pa. 2014) (citations, quotation marks and brackets omitted); see also Commonwealth v. Puksar, 951 A.2d 267, 277 (Pa. 2008) ("[a] claim of ineffectiveness cannot succeed through comparing, in hindsight, the trial strategy employed with alternatives not pursued.").

[6] To the extent that the PCRA court credited the testimony of trial counsel in this regard, we note a "PCRA court's credibility findings are to be accorded great deference, and where supported by the record, such determinations are binding on a reviewing court." Williams, 141 A.3d at 452 (citation omitted).

As the PCRA court's rationale is both sound and supported by prevailing law and the record, we agree with its conclusion that Appellant's second ineffectiveness claim fails.[7]

Finally, Appellant sets forth a third issue in his statement of questions presented, i.e., whether "the PCRA court err[ed] by using the standard and analysis for a claim of ineffectiveness for failure to call an expert witness at trial." Appellant's Brief at 6. Appellant has waived this issue for his failure to advance any argument in connection with this bald claim. See Appellant's Brief at 12-26; see also Johnson, supra; Lambert, supra.

Order affirmed.

_____

[7] Appellant also argues in connection with this issue that the PCRA court and trial court erred in determining "that information from a defense expert would have been discoverable at the time of trial[.]" Appellant's Brief at 23. However, Appellant waived this issue for failing to develop it in his brief. See Pa.R.A.P. 2119(a); see also Commonwealth v. Johnson, 985 A.2d 915, 924 (Pa. 2009) ("where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived"); Commonwealth v. Lambert, 797 A.2d 232, 243 (Pa. 2001) ("appellant's failure to forward relevant argumentation as to each necessary 'individual facet' of the [ineffectiveness] standard dooms his boilerplate claims to failure" (citation omitted)). Nevertheless, even if this claim was not waived, we would conclude that it is meritless for the reasons set forth by the PCRA court. See PCRA Court Opinion, 4/20/20, at 9-12.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>12/29/2020</u>