J-S08024-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ERIC L. MAXWELL | : | |
| | : | |
| Appellant | : | No. 1214 MDA 2021 |

Appeal from the PCRA Order Entered August 30, 2021
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0001517-1984

BEFORE:  BOWES, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED: JUNE 16, 2022**

Appellant Eric L. Maxwell appeals *pro se* from the order dismissing as untimely his fifth petition filed pursuant to the Post Conviction Relief Act[1] (PCRA).  Appellant asserts that he satisfied an exception to the PCRA's time-bar and presented claims of arguable merit.  After careful review, we affirm.

The PCRA court thoroughly summarized the relevant facts and protracted procedural history in this matter as follows:

> On March 16, 1984, [Appellant] was charged with criminal homicide, robbery, aggravated assault, and simple assault.  A jury trial was held from November 12 through November 28, 1984, before the Honorable Herbert A. Schaffner where [Appellant] was found guilty of murder in the first degree, robbery, and simple assault, and found not guilty of aggravated assault.  [Appellant] was sentenced to life in prison.  Attorney Spero Lappas represented [Appellant] through trial and [on] his first appeal to the Superior Court of Pennsylvania.

_____

[1] 42 Pa.C.S. §§ 9541-9546.

The Superior Court affirmed the judgment of sentence on August 4, 1986. [Appellant] filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, which was granted on January 15, 1987. [Appellant] then escaped from custody and the Commonwealth filed a motion to quash due to [Appellant] being a fugitive. On December 21, 1989, the Supreme Court quashed [Appellant's] appeal and noted that he forfeited his right to appeal by escaping from custody.

The Pennsylvania Supreme Court denied Appellant's motion for reconsideration on February 7, 1990. Accordingly, [Appellant's] judgment of [sentence] became final on May 8, 1990, upon the expiration of time for seeking review with the United States Supreme Court. Since [Appellant's] judgment of sentence became final prior to the effective date of the PCRA amendments, any petition for post-conviction relief would have been deemed timely filed within one year of the effective date [of the amendments]. Additionally, any second or subsequent petition must have been filed within one year of the effective date as well, unless [Appellant] was able to prove an exception to the time limitation enumerated by 42 Pa C.S. § 9545(b)(1).

**First PCRA Petition**

On April 16, 1990, [Appellant] filed his first *pro se* PCRA petition. A supplemental petition was filed by Attorney John Hardy on June 26, 1990, raising the issue of whether trial counsel was ineffective. That [PCRA] petition was dismissed on August 14, 1990, and [Appellant] appealed to the Superior Court of Pennsylvania, which affirmed the dismissal of the PCRA petition on May 28, 1991. [**Commonwealth v. Maxwell**, 595 A.2d 192 (Pa. Super. filed May 28, 1991) (unpublished mem.)]. [Appellant] filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, which was denied on December 11, 1991. [**Commonwealth v. Maxwell**, 600 A.2d 534, (Pa. 1991)].

**Second PCRA Petition**

On May 24, 2000, [Appellant] filed a second *pro se* PCRA petition.[2] The [PCRA court] dismissed the second petition as

---

[2] One of the bases for relief Appellant raised in his second PCRA petition was that there was a purposeful and discriminatory exclusion of African Americans
*(Footnote Continued Next Page)*

untimely and noted that [Appellant] failed to raise any claims that had not previously been litigated. [Appellant] appealed to the Superior Court of Pennsylvania and that Court affirmed the dismissal of his PCRA Petition on July 11, 2003. ***Commonwealth v. Maxwell***, 832 A.2d 539 (Pa. Super. filed July 11, 2003) (unpublished mem.).

**Third PCRA Petition**

On September 10, 2003, [Appellant] filed a writ of *habeas corpus*, considered his third PCRA petition. That petition was dismissed on March 4, 2004, as untimely. The dismissal of this PCRA petition was affirmed by the Superior Court on November 3, 2004[, and the] petition for allowance of appeal filed in the Supreme Court was denied on May 20, 2005. ***Commonwealth v. Maxwell***, 864 A.2d 580[(Pa. Super. filed Nov. 3, 2004) (unpublished mem.)], *appeal denied*, 875 A.2d 1074 (Pa. 2005).

**Fourth PCRA Petition**

[Appellant] filed his fourth *pro se* PCRA Petition on August 20, 2012. On March 21, 2016, [Appellant] filed a motion for leave to amend petition for [PCRA] relief and attached an amended PCRA [petition]. The petition for leave to amend was subsequently granted. Through counsel, on September 7, 2016, [Appellant]

---

from the jury in violation of ***Batson v. Kentucky***, 476 U.S. 79 (1986). Second PCRA Petition, 5/24/00, at App. 1-2. We note that in ***Batson***, the U.S. Supreme Court held that "the Equal Protection Clause forbids [a] prosecutor to challenge potential jurors solely on account of their race." ***Batson***, 476 U.S. at 89; ***see also Commonwealth v. Harris***, 817 A.2d 1033 (Pa. 2002) (applying ***Batson***). Our Supreme Court recently stated: "Deliberate racial discrimination in any form, and most definitely in the jury selection process, is repugnant to the Equal Protection Clause of the Fourteenth Amendment and cannot be countenanced." ***Commonwealth v. Edwards***, 2022 WL 1087179, at *15 (Pa. file Apr. 12, 2022) (Opinion Announcing the Judgment of the Court ) (citation omitted). However, not all serious prosecutorial error warranting a new trial likewise merits double jeopardy protection requiring the dismissal of criminal charges. ***Id.*** Accordingly, "the question for double jeopardy purposes continues to be one of egregiousness of the challenged prosecutorial misconduct, as opposed to a categorical finding that a general type of prosecutorial misconduct constitutes prosecutorial overreaching that precludes retrial as a matter of law." ***Id.***

filed a supplemental PCRA petition, contending that the newly discovered fact exception to the timeliness requirement was met.

In his fourth PCRA Petition, [Appellant] claimed under the newly discovered fact exception to the PCRA's time-bar that his brother's statement to him during a visit with him at SCI-Camp Hill in July 2016 was a newly discovered fact. [Appellant's] brother recalled for [Appellant] that he (Appellant's brother) overheard the prosecuting attorney tell a police officer at the 1984 trial that he did not think there would be any African Americans on the jury.

A hearing was held before the Honorable Scott A. Evans on May 15, 2017, after which it was decided that [Appellant] met the jurisdictional requirements of the PCRA. Following that hearing, Judge Evans and the Dauphin County Judges recused themselves since President Judge Richard A. Lewis was the District Attorney who prosecuted [Appellant's] case in 1984.[3]

PCRA Ct. Op., 8/30/21, at 1-4 (some formatting altered). On January 31, 2018, Senior Judge John Braxton, sitting by assignment, held a hearing on Appellant's fourth PCRA petition. During the hearing, Appellant called Judge Lewis as a witness. On direct examination, the following exchange occurred:

ATTORNEY [KAITLYN] CLARKSON [(Appellant's Counsel)]: Thank you, Your Honor. Our first witness would be President Judge Lewis.

RICHARD A. LEWIS,
called as a witness, having been duly sworn or affirmed, was examined and testified as follows:

THE COURT: Ms. Clarkson, you may proceed.

ATTORNEY CLARKSON: Thank you, Your Honor.

DIRECT EXAMINATION

_____

[3] For clarity, we note that Richard A. Lewis, the former Dauphin County District Attorney who prosecuted Appellant in 1984, was subsequently elected as a judge in the Dauphin County Court of Common Pleas, and he later served as President Judge. Throughout our decision, we refer to him as Judge Lewis.

- 4 -

BY ATTORNEY CLARKSON:

Q. Good morning, Your Honor.

A. Good morning.

Q. Could I start with your name for the record?

A. Richard, middle initial A as in Anthony, Lewis, L-E-W-I-S.

Q. You are the President Judge of Dauphin County?

A. Yes, ma'am.

Q. But in 1984, you were the District Attorney prosecuting the case of the Commonwealth versus [Appellant]?

A. That is correct.

Q. Do you know or have you ever known Jack McMahon?

A. No, I don't believe so.

Q. Do you ever remember attending CLEs or seminars directed or taught by Jack McMahon?

A. I don't believe so, no.

[The Commonwealth]: Are you referring to Jack McMahon?

ATTORNEY CLARKSON: Possibly. I could be pronouncing that wrong.

THE COURT: Just a second. I think it's significant that we identify this person because I believe he was one of my former employees, if it's who I think it is.

ATTORNEY CLARKSON: I believe so, sir, he was out of Philadelphia.

[The Commonwealth]: He never conducted any CLEs in this area.

THE WITNESS: And I never attended any CLEs.

THE COURT: The [c]ourt will disclose fully that I trained [Mr. McMahon]. He was an Assistant District Attorney under me and in my unit back in Year of Our Lord in 1976, I think, that far back, and I haven't given any guidance since then.

- 5 -

THE WITNESS: For the record, I did not know Mr. McMahon.

BY ATTORNEY CLARKSON:

Q. Thank you. In and around the 1980s, did you attend any CLEs or seminars that taught ways to exclude African Americans from serving on a jury?

A. No, ma'am.

Q. Now, I understand that it has been over 30 years since this trial. Do you remember the case?

A. Bits and pieces.

Q. Do you remember how *voir dire* was conducted?

A. Yes, it was individual *voir dire* because we had filed an application to seek the death penalty.

Q. Do you or the Office of the District Attorney still have any of your notes from jury selection?

A. Yes, I have a few notes, yes.

Q. Did you get a chance to review those notes?

A. I did. Just on the *voir dire*. Not on the trial.

Q. Understood. Do you remember how many peremptory strikes were given for each side?

A. Twenty.

Q. Do you remember how you used your peremptory strikes?

A. I used 15 peremptory challenges. Defense used 20.

Q. Do you remember specifically who you used them on?

A. No, not without looking at the sheet. I'd also received from Mr. Chardo a copy of -- or at least what was in the DA's file, a copy of the jury sheet that would refresh me obviously, but, no, I don't remember other than that.

Q. Do you remember going into chambers for one African American juror?

A. I do not.

Q. Did you strike all African American jurors who could not vote for the death penalty?

A. I really don't recall who was struck and who was not, and just as [Appellant's trial counsel] indicated in the stipulation, I don't have any recollection of the composition of the jury.

Q. Does that include the jury pool?

A. Absolutely.  Sure.

Q. So did you have an opportunity before today to read what was transcribed of jury selection?

A. I did not.

Q. Do you remember a Leroy Jefferies, an African American male who stated he could vote for the death penalty?

A. I do not.

Q. Do you remember a Kent Lee Johnson, a white male who stated he could vote for the death penalty?

A. I do not.

Q. Do you remember how many total potential jurors there were?

A. That were questioned?

Q. Um-hum.

A. Somewhere in the low 70s, give or take.

Q. Do you have any memory of how many were white and how many were African American?

A. No, absolutely not, no.

Q. Do you remember racial composition of the seated jury to hear the case?

A. I do not.

Q. Did you tell the prosecuting officer that you will not allow any African Americans to be seated on the jury?

A. I did not.

Q. Did you tell the prosecuting officer not to worry that you don't think there will be any African Americans on the jury?

A. I did not.

Q. Would it have worried you if there were any African Americans on the jury?

A. No.

**Q. Do you believe that African Americans are pro-defense or pro-defendant?**

**A. I think it depends on the case.**

**Q. Do you feel that African Americans are anti-police?**

**A. Well, we're talking 1984?**

**Q. Yes, Your Honor.**

**A. I think I'm more comfortable saying, no, I don't believe so for 1984 than arguably I am today. There's a lot of dissension today, which is unfortunate I find. But back in 1984, no, I didn't sense any of that.**

Q. Prior to *Batson* . . . , did you ever try to exclude African Americans solely because of their race?

A. I did not.

Q. Prior to *Batson*, did you believe it was permissible to exclude all African Americans from serving because of their race?

A. Not solely because of their race. I don't think that would be a proper gauge. I guess it depended on the entire picture of the juror, age, occupation, demeanor, body language, so many things go into a *voir dire* selection process, especially if it's an individual *voir dire*.

Q. In a case such as this where it was an African American being tried for killing a white male, would you be more concerned about having any African Americans on the jury?

A. Well, I think it's an issue. It's a factor. It's a concern. But I think you have to look at the entire picture, and since it is an individual *voir dire*, you know, your concentration tends to be, at least for me it did, tends to be on how they respond to the death penalty question.

Q. And if they could vote for the death penalty, would you still try to exclude them?

A. Well, that's certainly a positive factor, but it would depend on everything else.

Q. What are some of the other considerations you take into account?

A. Age, occupation, body language, demeanor, prior jury service. I guess they would be the main ones.

Q. Do you take into consideration the neighborhood that they live in?

A. Not unless it's relevant to the case itself but, no.

Q. In around the 1980s, have you used the "n" word?

A. I have not --

Q. Have you ever --

A. Or I did not.

Q. Have you used any other racial slur?

A. I certainly hope not.

N.T., 1/31/18, at 6-12 (some formatting altered).[4]

_____

[4] After the January 31, 2018 hearing, although Senior Judge Braxton did not specifically state that it found Judge Lewis' testimony credible, it did conclude as follows: "During the evidentiary hearing we heard testimony from President Judge Lewis, [Appellant's brother], [Appellant], and [the victim's widow]. After hearing all of the testimony and viewing all of the evidence presented, this [c]ourt finds the testimony of [Appellant's brother] to not be credible. PCRA Ct. Op, 3/27/18, at 7.

- 9 -

Following the January 31, 2018 hearing, the PCRA court issued an order dismissing Appellant's fourth PCRA petition as untimely. Order, 5/23/18. Appellant filed a timely appeal on June 18, 2018.

> On April 30, 2020, the Pennsylvania Superior Court [affirmed the dismissal of Appellant's] fourth PCRA petition as untimely and held that a mere corroborative source for previously known facts and claims cannot satisfy the newly discovered facts exception to the PCRA's time-bar. ***Commonwealth v. Maxwell***, 232 A.3d 739 (Pa. Super. 2020) [(*en banc*) (***Maxwell 4***)]. On June 3, 2020 [Appellant] filed a petition for allowance of appeal with the Supreme Court of Pennsylvania which was denied on [December 23, 2020]. [***Commonwealth v. Maxwell***, 242 A.3d 1290 (Pa. 2020).]

PCRA Ct. Op., 8/30/21, at 1-5 (some formatting altered).

On January 27, 2021, shortly after our Supreme Court denied Appellant's petition for allowance of appeal from this Court's decision in ***Maxwell 4***, Appellant filed the instant *pro se* PCRA petition, his fifth. Appellant asserted, among other things, that he uncovered newly discovered facts that satisfied an exception to the PCRA's time bar. Fifth PCRA Petition, 1/27/21, at 3(a). Appellant alleged that he became aware of the newly discovered facts during the evidentiary hearing on his fourth PCRA petition on January 31, 2018. ***Id.*** Specifically, Appellant referred to testimony from Judge Lewis, the prosecutor at his 1984 trial, and claimed that Judge Lewis admitted a race-based bias in selecting the jury. ***Id.*** at 3(a)-3(e).

On February 25, 2021, the PCRA court appointed William Shreve, Esq., as counsel for Appellant. Thereafter, on July 2, 2021, Attorney Shreve filed a

motion to withdraw and a **Turner**/**Finley**[5] letter. On July 9, 2021, the PCRA court issued an order concluding that Appellant failed to satisfy the newly discovered fact exception to the PCRA time bar, notifying Appellant of its intent to dismiss the PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907, and granting Attorney Shreve's motion to withdraw. Order, 7/9/21. In an order filed on August 30, 2021, the PCRA court dismissed Appellant's fifth PCRA petition as untimely. Order, 8/30/21.

Appellant filed a timely appeal on September 15, 2021. Both the PCRA court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant presents the following issues:

1. Did not the PCRA court err[] in holding that Appellant did not meet the timeliness requirements of the PCRA, and err[] in not addressing the merits of Appellant's PCRA petition?

2. Whether Judge Lewis violated (Pa.Rules.Code of Judicial Conduct Canon 2. Rule 2.3.(A)-(B) bias, prejudice, and harassment) when he admitted he, "believes African-Americans are anti- police," and "believes African-Americans are pro-defense or pro-defendant"?

3. Did not the PCRA court err in failing to address Appellant's requests in his response for leave to amend PCRA petition *pro se*?

4. Did not the PCRA court err[] in failing to address Appellant's response to PCRA counsel's motion to withdraw and PCRA court's Rule 907 notice to dismiss, prior to granting counsel's motion to withdraw and dismissing Appellant's PCRA petition?

5. Did not the PCRA court err[] in granting PCRA counsel's motion to withdraw when counsel failed to comply with the mandates

---

[5] **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).

of ***Turner*/*Finley***, and with procedural requirements to forward Appellant a copy of motion to withdraw the "no-merit" letter; and statement advising Appellant of the right to proceed *pro se* or with new counsel, before due date to file a response had expired?

6. Whether PCRA counsel was ineffective in failing to amend PCRA petition, and in failing to adequately consult with Appellant about facts of the case, and make any effort to develop fully his claims?

7. Whether prior PCRA counsel was ineffective in failing to preserve prejudicial statements of Judge Lewis admitting he, "believes African Americans are pro-defense or pro-defendant," and "believes African Americans are anti-police," as new facts which can establish a discriminatory motive for excluding all African American venirepersons from Appellant's jury?

8. Whether all prior counsels were ineffective in failing to preserve and raise "racial discrimination in jury selection" at trial, on direct appeal, and first PCRA petition?

Appellant's Brief at 4-5 (some formatting altered).[6]

In reviewing an order denying a PCRA petition, our standard of review is well settled:

> [O]ur standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043 (Pa. Super. 2019) (citations omitted and formatting altered).

## 1. **Timeliness**

_____

[6] For purposes of our discussion, we have reordered Appellant's issues.

In his first issue, Appellant contends that the PCRA court erred when it concluded that Appellant's fifth PCRA petition was untimely. We note that the timeliness of a PCRA petition is a threshold jurisdictional question. *See Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014); *see also Commonwealth v. Ballance*, 203 A.3d 1027, 1031 (Pa. Super. 2019) (stating that "no court has jurisdiction to hear an untimely PCRA petition"). "A PCRA petition, including a second or subsequent one, must be filed within one year of the date the petitioner's judgment of sentence became final, unless he pleads and proves one of the three exceptions outlined in 42 Pa.C.S. § 9545(b)(1)." *Commonwealth v. Jones*, 54 A.3d 14, 16 (Pa. 2012) (citation and footnote omitted). A judgment of sentence becomes final at the conclusion of direct review, or at the expiration of time for seeking such review. *See id.* at 17. However, courts may consider a PCRA petition filed more than one year after a judgment of sentence becomes final if the petitioner pleads and proves one of the following three statutory exceptions:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). A petitioner asserting one of these exceptions must file a petition within one year of the date the claim could have first been presented. **See** 42 Pa.C.S. § 9545(b)(2).[7] It is the petitioner's "burden to allege and prove that one of the timeliness exceptions applies." **Commonwealth v. Albrecht**, 994 A.2d 1091, 1094 (Pa. 2010) (citations omitted and some formatting altered).

To establish the newly discovered fact exception to the PCRA time bar, a petitioner must demonstrate that he did not know the facts upon which he based his petition and could not have learned those facts earlier by the exercise of due diligence. **Commonwealth v. Brown**, 111 A.3d 171, 176 (Pa. Super. 2015) (citations omitted). Due diligence requires that the petitioner take reasonable steps to protect his own interests. **Id.** A petitioner must explain why he could not have learned these "new facts" earlier with the exercise of due diligence. **Id.** The focus of this exception is on newly discovered facts, not on newly discovered or newly willing sources that merely corroborate known facts or previously raised claims. **Id.**; **see also Maxwell 4**, 232 A.3d at 745.

---

[7] On October 24, 2018, the General Assembly amended Section 9545(b)(2) and extended the time for filing a petition from sixty days to one year from the date the claim could have been presented. **See** 2018 Pa.Legis.Serv.Act 2018-146 (S.B. 915), effective December 24, 2018. The amendment applies only to claims arising one year before the effective date of this section, December 24, 2017, or thereafter.

As stated above, Appellant's judgment of sentence became final on May 8, 1990, upon the expiration of time for seeking review with the United States Supreme Court. *See* 42 Pa.C.S. § 9545(b)(3); *see also* PCRA Ct. Op., 8/30/21, at 2. Additionally, it is undisputed that Appellant's fifth PCRA petition, which was filed on January 27, 2021, is facially untimely. Therefore, absent a statutory exception to the PCRA time bar, the PCRA court lacked jurisdiction over Appellant's fifth PCRA petition.

Appellant argues that Judge Lewis' testimony from the January 31, 2018 evidentiary hearing constitutes newly discovered facts which satisfy the exception to the PCRA time bar pursuant to 42 Pa.C.S. § 9545(b)(1)(ii). Appellant's Brief at 23-24, 28-29.[8] Specifically, Appellant claims that Judge Lewis made prejudicial statements, negatively stereotyped African Americans, admitted that he believed that African Americans are anti-police, and indicated that he had discriminatory motives for striking African American members of the jury pool. *Id.* at 21-23, 28-29. Further, Appellant states that he

_____

[8] In the argument portion of his *pro se* brief, Appellant conflates numerous claims and standards of review including the jurisdictional time requirements of the PCRA, ineffective assistance of counsel, and equal protection. Appellant's Brief at 14-29. Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. *Commonwealth v. Adams*, 882 A.2d 496, 497-98 (Pa. Super. 2005) (citations omitted). Rather, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing. *Id.* Accordingly, we have liberally construed Appellant's brief and were able to glean that he is arguing that newly discovered evidence has established an exception to the PCRA time bar.

discovered these facts when Judge Lewis testified at the January 31, 2018 evidentiary hearing and could not have learned of them at an earlier time. Therefore, Appellant concludes that the PCRA court erred in denying his fifth petition as untimely.

In considering whether a petitioner has established the newly discovered fact exception to the PCRA time-bar, we do not review the merits of the underlying claim. *See Commonwealth v. Abu–Jamal*, 941 A.2d 1263, 1268 (Pa. 2008) (explaining that "the exception set forth in subsection (b)(1)(ii) does not require any merits analysis of the underlying claim"). Instead, we must determine whether the petitioner has proven "that the facts were unknown to him and that he exercised due diligence in discovering those facts." *Commonwealth v. Bennett*, 930 A.2d 1264, 1270 (Pa. 2007).

Here, Appellant states that he learned of Judge Lewis' testimony during the hearing on January 31, 2018. Appellant's fifth PCRA Petition, 1/27/21, at 3. As a general rule, Appellant had one year from that date in which to raise this claim as a newly discovered fact and exception to the PCRA time bar. *See* 42 Pa.C.S. § 9545(b)(2). However, because Appellant's counsel filed a timely notice of appeal after Appellant's fourth PCRA petition was denied, the PCRA court would not have had jurisdiction to consider his fifth PCRA petition while the fourth PCRA was pending.

Our Supreme Court has held that a PCRA court is precluded from considering a subsequent PCRA petition while an appeal from the denial of a prior PCRA petition is still pending. *Commonwealth v. Lark*, 746 A.2d 585

(Pa. 2000); *see also Commonwealth v. Montgomery*, 181 A.3d 359, 364 (Pa. Super. 2018) (*en banc*). Accordingly, a PCRA petitioner must either appeal the order denying his prior PCRA petition **or** not appeal the order and file a new PCRA petition. *Commonwealth v. Zeigler*, 148 A.3d 849, 852 (Pa. Super. 2016). Caselaw does not permit a petitioner to file an appeal **and also** file a new PCRA petition while the prior PCRA is pending, because "prevailing law requires that the subsequent [PCRA] petition must give way to a pending appeal from the order denying a prior petition." *Id.* at 852-53.

Our Supreme Court has explained:

> When an appellant's PCRA appeal is pending before a court, a subsequent PCRA petition cannot be filed until the resolution of the pending PCRA petition by the highest state court in which review is sought, or upon the expiration of the time for seeking such review. If the subsequent petition is not filed within one year of the date when the judgment became final, then the petition must plead and prove that one of the three exceptions to the time bar under 42 Pa.C.S. § 9545(b)(1) applies. The subsequent petition must also be filed within [one year] of the date of the order which finally resolves the previous petition, because this is the first "date the claim could have been presented." 42 Pa.C.S. § 9545(b)(2).

*Lark*, 746 A.2d at 588 (some formatting altered)*; see also Commonwealth v. Breeden*, 715 EDA 2020, 2021 WL 1627209 at *3 (Pa. Super. filed Apr. 27, 2021) (unpublished mem.) (concluding that the appellant met the one-year time limit for a newly discovered fact claim by raising the issue within one year "after the appeal of his [prior] PCRA petition's dismissal").

In the instant case, Appellant's appeal from the denial of his fourth PCRA petition remained pending until our Supreme Court denied allowance of appeal

on December 23, 2020.[9]  Therefore, Appellant had one year from the date of that order in which to file his fifth PCRA petition invoking the newly discovered fact exception to the PCRA time bar.  Appellant filed his fifth PCRA petition on January 27, 2021.  Therefore, we conclude that Appellant met the one-year time limit for raising his newly discovered fact claim.

Further, Appellant has identified new facts, Judge Lewis' testimony, which would have been unknown to Appellant and not reasonably ascertainable until after the January 31, 2018 hearing.  Accordingly, we conclude that Appellant satisfied an exception to the PCRA time bar.  Therefore, Appellant's fifth PCRA petition was timely filed.  For this reason, we will proceed to address the issues Appellant raised on appeal.

## 2. **Allegation of Racial Bias**

Underlying Appellant's newly discovered fact claim is an allegation that Judge Lewis made statements admitting that he had an illegal racial bias in selecting the jury for Appellant's trial.  Appellant's Brief at 18, 29.  Appellant asserts that through these admissions, Judge Lewis also violated Pennsylvania's Code of Judicial Conduct Canon 2 (Rule 2.3.(A)-(B)).  *Id.* at 29.

At the January 31, 2018 hearing, the PCRA court heard testimony from Judge Lewis, Appellant, the victim's widow, and Appellant's brother.

---

[9] Appellant did not pursue a writ of *certiorari* to the United States Supreme Court.

Appellant's brother stated that he heard Judge Lewis make statements about using racial bias in selecting the jury. However, the PCRA court concluded that Appellant's brother's testimony was not credible. PCRA Ct. Op, 3/27/18, at 7. Therefore, the PCRA court concluded that there was no merit to Appellant's claims concerning Judge Lewis' alleged bias.[10]

In response to questioning at the PCRA hearing, Judge Lewis stated that race could be a factor in selecting a jury, that an African American could be more pro-defense or pro-defendant depending on the case, and that, given the context of 1984, he did not believe that African Americans were anti-police. Further, Judge Lewis plainly stated that he never excluded a juror based on race. N.T., 1/31/18, at 10-12. Contrary to Appellant's allegations, nowhere in his testimony did Judge Lewis admit to striking or challenging potential jurors based solely on race in violation of **Batson**. **See** N.T., 1/31/18, at 6-18. On this record, Judge Lewis' testimony revealed no racial bias or improper racial motive in the instant case. Therefore, we agree with the PCRA court that Appellant's claim is meritless. **See Batson**, 476 U.S. at 89; **see also Edwards**, 2022 WL 1087179, at *15. Accordingly, Appellant is not entitled to relief.

_____

[10] In addition to concluding that Appellant's PCRA petition was untimely, the PCRA court also explained that the petition fails because there is no merit to Appellant's claims. PCRA Ct. Op., 8/30/21, at 11-15.

### 3. Request to Amend PCRA

In his next issue, Appellant contends that the PCRA court erred when it failed to address his request to amend his fifth PCRA petition. Appellant's Brief at 14. However, Appellant states only a boilerplate claim of error, and he does not indicate what he would have included if he had been permitted to amend his petition. Further, he fails to provide any pertinent legal argument or citation to relevant authority. Therefore, we find this issue waived. *See* Pa.R.A.P. 2119(a) (requiring "discussion and citation of authorities as are deemed pertinent"); *Commonwealth v. Johnson*, 985 A.2d 915, 924-25 (Pa. 2009) (stating that "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority[,] or fails to develop the issue is any other meaningful fashion capable of review, that claim is waived" and reiterating that "it is not the role of this Court to formulate [an a]ppellant's arguments for him").[11]

In any event, we note that although Appellant sought leave to amend his fifth PCRA petition, he did not raise any issues that were not already included in the underlying petition. *See* Response to Notice of Intent to

---

[11] We are cognizant of our Supreme Court's recent decision *Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021), in which the High Court held that a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise ineffective assistance of counsel claims at the first opportunity to do so, even when on appeal. Here, however, we are not concluding that Appellant waived his fourth and sixth issues for failing to present them to the PCRA court and raising the claims in the first time on appeal. Rather, there was no barrier to Appellant raising these issues. Instead, the issue is now that once raised, Appellant failed to develop any argument on his boilerplate claims of error.

Dismiss, 7/26/21, at 2-4; **see also** Supplemental Response to Notice of Intent to Dismiss, 8/13/21, at 2-3. Further, we reviewed Appellant's substantive claims in the instant appeal and have concluded that he is not entitled to relief on those issues. Therefore, even if the PCRA court erred by failing to respond to Appellant's supplemental filings, we conclude that any such error was harmless. **See, e.g., Commonwealth v. Poplawski**, 130 A.3d 697, 716 (Pa. 2015) (an error will be deemed harmless if "the error did not prejudice the [Appellant] or the prejudice was *de minimis*").

### 4. **Response to PCRA Counsel's Motion to Withdraw**

Appellant next alleges that the PCRA court erred in failing to address Appellant's response to PCRA counsel's motion to withdraw and PCRA court's Rule 907 notice to dismiss before it issued the order to granting counsel's motion to withdraw and dismissing Appellant's PCRA petition. Appellant's Brief at 15. However, Appellant offers only a bald statement of error, and he fails to provide any pertinent legal argument or citation to relevant authority.[12]

---

[12] As we have stated, in Appellant's response and supplemental response to the PCRA court's notice of intent to dismiss, Appellant sought to raise newly discovered facts and allegations that Judge Lewis admitted having a racial bias in selecting Appellant's jury. **See** Response to Notice of Intent to Dismiss, 7/26/21, at 2-4; Supplemental Response to Notice of Intent to Dismiss, 8/13/21, at 2-3. As discussed previously, Appellant established an exception to the PCRA time bar and the PCRA court erred in finding Appellant's fifth PCRA petition untimely. However, because Appellant's claims were meritless, we conclude that the PCRA court's failure to address Appellant's responses to the Rule 907 notice was harmless. **See, e.g., Poplawski**, 130 A.3d at 716.

Accordingly, we deem the issue waived. **See** Pa.R.A.P. 2119(a); **see also Johnson**, 985 A.2d at 924-25.

### 5. **_Turner/Finley_**

Appellant next contends that the PCRA court erred when it concluded that PCRA counsel satisfied the requirements of **Turner**/**Finley** and permitted counsel to withdraw. Appellant's Brief at 16.

This Court has explained:

> Counsel petitioning to withdraw from PCRA representation must proceed ... under [**Turner** and **Finley**,] and ... must review the case zealously. **Turner**/**Finley** counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.
>
> Counsel must also send to the petitioner: (1) a copy of the "no merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.
>
> *        *        *
>
> Where counsel submits a petition and no-merit letter that ... satisfy the technical demands of **Turner**/**Finley**, the [PCRA court] must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

**_Commonwealth v. Muzzy_**, 141 A.3d 509, 510-11 (Pa. Super. 2016) (formatting altered).

Following our review, we conclude that the record supports the PCRA court's conclusion that PCRA counsel complied with the procedural

requirements set forth in **Muzzy**.  Motion to Withdraw, 7/2/21.  In PCRA counsel's motion to withdraw, he concluded that all of Appellant's claims were meritless or previously litigated.  **Id.**  at ¶¶43-49.  However, PCRA counsel also stated that Appellant failed to satisfy an exception to the PCRA time bar.  **Id.** at ¶¶47-48.

As discussed above, the PCRA court erred in finding that Appellant's fifth PCRA petition was untimely.  Accordingly, there was, in fact, merit to Appellant's claim concerning an exception to the PCRA time bar.  For that reason, we agree with Appellant that that the PCRA court erred when it concluded that Appellant's fifth PCRA petition was untimely and no exceptions applied.

However, this finding alone does not entitle Appellant to relief.  Indeed, the PCRA court stated that even if Appellant's fifth PCRA petition was timely, Appellant's claims of error were meritless. PCRA Ct. Op., 8/30/21, at 11-15; **see also** Order Granting PCRA Counsel's Petition to Withdraw, 7/9/21 (stating that there are no genuine issues of material fact in Appellant's petition).  As discussed above, we agree and conclude that there is no merit to Appellant's fifth PCRA petition and Appellant's claims that Judge Lewis admitted violating **Batson**.

Accordingly, although the PCRA court erred in finding that Appellant's fifth PCRA petition was untimely and subsequently granted PCRA counsel's motion to withdraw, the error was ultimately harmless because there was no merit to Appellant's PCRA petition. **See, e.g., Commonwealth v. Natividad**,

200 A.3d 11, 29 (Pa. 2019) (concluding that although the appellant had satisfied an exception to the PCRA time bar which conferred jurisdiction, no relief was due as the issues were meritless); *cf. **Commonwealth v. Gaerttner***, 649 A.2d 139, 141-42, 143 (Pa. Super. 1994) (providing that although counsel's no-merit letter fell "considerably short" of the requirements to withdraw under ***Finley***, the defendant was not prejudiced due to there being no issues of merit). Therefore, no relief is due.

## 6. PCRA Counsel Failed to Consult with Appellant

In his sixth issue on appeal, Appellant argues that PCRA counsel was ineffective for failing to adequately consult with Appellant about the facts of the case and develop Appellant's claims.

The standard we apply when reviewing claims of ineffective assistance of counsel is as follows:

> To establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.
>
> We have explained that a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination.
>
> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have

- 24 -

chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.

Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Boilerplate allegations and bald assertions of no reasonable basis and/or ensuing prejudice cannot satisfy a petitioner's burden to prove that counsel was ineffective. Moreover, a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness.

*Sandusky*, 203 A.3d at 1043-44 (citations omitted and formatting altered).

In support of this claim, Appellant offers only undeveloped and boilerplate statements of error. *See* Appellant's Brief at 19-20. Appellant fails to provide any pertinent legal argument of citation to relevant authority. Accordingly, this issue is waived. *See* Pa.R.A.P. 2119(a); *see also Johnson*, 985 A.2d at 924-25.

### 7. Failure to Preserve Alleged Racially Biased Statements

Appellant next contends that PCRA counsel was ineffective for failing to "preserve and raise" Judge Lewis' racially biased statements. Appellant's Brief at 22.[13] We have already concluded that there is no merit to Appellant's claim

---

[13] To the extent that Appellant continues to argue that Judge Lewis' statements constitute "newly discovered facts" and establish an exception to the PCRA time bar, *see* Appellant's Brief at 22, we have already agreed. Therefore, the "newly discovered facts" were not waived, because Appellant

*(Footnote Continued Next Page)*

that Judge Lewis admitted an illegal racial bias or that he violated **Batson**. Therefore, counsel was not ineffective for failing to preserve or raise this issue. **See Commonwealth v. Fears**, 86 A.3d 795, 801 (Pa. 2014) (reiterating that it well settled that counsel cannot be ineffective for failing to pursue or raise a meritless claim). Accordingly, Appellant is due no relief on this issue.

## 8. **All Prior Counsel Were Ineffective**

In his final issue, Appellant asserts that all prior counsel were ineffective for failing to preserve and raise the racial discrimination issues with respect to Appellant's jury selection. Nevertheless, as we stated above, we agree with the PCRA court that there is no merit to any of Appellant's issues. Accordingly, Appellant is due no relief. **See Fears**, 86 A.3d at 801.

## **Conclusion**

For the reasons set forth above, we conclude that Appellant satisfied an exception to the PCRA time bar. **See** 42 Pa.C.S. § 9545(b)(ii). However, we will not disturb the PCRA court's order denying PCRA relief. As stated previously, although Judge Lewis' testimony constituted a newly discovered fact for purposes of timeliness, Appellant's underlying issues are nonetheless meritless. Therefore, there was no prejudice to Appellant in the PCRA court permitting PCRA counsel to withdraw, and because counsel cannot be

---

raised them in his fifth PCRA petition, and we concluded that claim satisfied an exception to the PCRA time bar. However, as discussed, there is no merit to the substantive issue.

considered ineffective for failing to raise a meritless claim, Appellant's claims of ineffectiveness fail.  Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/16/2022