J-E02002-19

2020 PA Super 108

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC L. MAXWELL | : | |
| | : | |
| Appellant | : | No. 997 MDA 2018 |

Appeal from the PCRA Order May 23, 2018
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s): CP-22-CR-0001517-1984

BEFORE:  BOWES, J., SHOGAN, J., LAZARUS, J., OLSON, J., STABILE, J.,
DUBOW, J., KUNSELMAN, J., NICHOLS, J., and MURRAY, J.

OPINION BY OLSON, J.:                    **FILED: APRIL 30, 2020**

Appellant, Eric L. Maxwell, appeals from the May 23, 2018 order entered in the Criminal Division of the Court of Common Pleas of Dauphin County that dismissed as untimely his fourth petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  On appeal, Appellant asserts that he validly invoked the "newly-discovered" fact exception to the PCRA's time-bar found at 42 Pa.C.S.A. § 9545(b)(1)(ii) when his petition cited a July 9, 2016 statement by his brother, Brian Maxwell (Brian).[1]  More precisely, Appellant contends that Brian's July 2016 statement constituted a new fact or

---

[1] In his statement, which we shall describe in greater detail below, Brian claimed that, while he attended Appellant's 1984 trial, he overheard the prosecuting attorney say to a police officer that the prosecutor did not think there would be any African Americans on Appellant's jury.

a new theoretical variant of a previously raised **Batson**[2] challenge and, hence, was not a newly-willing or newly-discovered corroborative source of a previously raised claim, which we have held does not trigger the timeliness exception found at § 9545(b)(1)(ii). **See Commonwealth v. Robinson**, 185 A.3d 1055, 1064 n.4 (Pa. Super. 2018) (*en banc*), *appeal denied*, 192 A.3d 1105 (Pa. 2018). We reject Appellant's contention and affirm the dismissal of Appellant's fourth petition as untimely.

We summarized the facts underlying Appellant's convictions in our 1986 opinion addressing the claims Appellant raised on direct appeal.

> On March 15, 1984, an unmasked gunman entered the Thrift Drug Store located on South 29th Street in Harrisburg[, Pennsylvania] and demanded money from the cashier, Shavona Mitchell. The cashier placed the cash drawer in a paper bag and handed the package to the gunman. The gunman departed from the store and walked along the front of the store toward the Weis Market, located adjacent to the store. Spencer W. Arnold, Jr., a security guard employed by the Thrift Drug Store was summoned by the clerk and he immediately gave chase to the gunman. Arnold apprehended the gunman and started to walk him back to the drug store. Approaching the store, the gunman grabbed Arnold, threw him against [a] fence, pulled out a gun and shot him.
>
> The gunman ran to his car and drove from the Weis Market parking lot at a high rate of speed. The gunman, later identified as [Appellant], drove to his sister's house where several friends

_____

[2] **Batson v. Kentucky**, 476 U.S. 79 (1986). For convenience and clarity, we shall refer to the substantive claim Appellant seeks to raise before the PCRA court as a "**Batson** challenge" or "**Batson**-type challenge." We are aware, however, that the United States Supreme Court filed its decision in **Batson** in 1986, while Appellant's homicide trial took place in November 1984.

were gathered. These friends later drove [Appellant] to the York[, Pennsylvania] bus terminal where he boarded a bus bound for Baltimore[, Maryland]. At the Baltimore bus station[, Appellant] was placed into custody on unrelated firearm charges.

*Commonwealth v. Maxwell*, 513 A.2d 1382, 1384 (Pa. Super. 1986), *appeal granted*, 520 A.2d 1384 (Pa. 1987), *appeal dismissed*, 569 A.2d 328 (Pa. 1989).

In November 1984, a jury found Appellant guilty of first-degree murder, robbery, and simple assault.[3] Thereafter, the trial court imposed a life sentence without the possibility of parole for Appellant's first-degree murder conviction,[4] along with two to five years' incarceration for his remaining offenses. This Court affirmed Appellant's judgment of sentence on direct appeal. *See Maxwell*, 513 A.2d at 1384. Subsequently, our Supreme Court granted allowance of appeal, *Commonwealth v. Maxwell*, 520 A.2d 1384 (Pa. 1987), but thereafter dismissed further review after learning that Appellant escaped from confinement on August 20, 1989. *See Commonwealth v. Maxwell*, 569 A.2d 328 (Pa. 1989) (*per curiam*). Appellant did not seek review before the United States Supreme Court.

_____

[3] 18 Pa.C.S.A §§ 2502(a), 3701, and 2701, respectively.

[4] A sentence of life without the possibility of parole was imposed after the jury found that death was not an appropriate punishment since the aggravating circumstances did not outweigh the mitigating circumstances.

Appellant has actively pursued collateral relief in the many years since his judgment of sentence became final. On August 14, 1990, the PCRA court dismissed Appellant's first PCRA petition. This Court affirmed and our Supreme Court denied allowance of appeal. ***Commonwealth v. Maxwell***, 595 A.2d 192 (Pa. Super. 1991) (unpublished memorandum), *appeal denied*, 600 A.2d 534 (Pa. 1991). On August 10, 1993, the United States District Court for the Middle District of Pennsylvania denied Appellant's petition for a writ of *habeas corpus* and the United States Court of Appeals for the Third Circuit dismissed his appeal. ***See Maxwell v. Domovich***, 2012 WL 383669, *1 (M.D. Pa. Feb. 6, 2012) (describing the procedural posture of Appellant's *habeas corpus* claims). Thereafter, on September 20, 2001, the PCRA court dismissed a second PCRA petition filed by Appellant.[5] This Court affirmed that dismissal. ***Commonwealth v. Maxwell***, 832 A.2d 539 (Pa. Super. 2003) (unpublished memorandum). On March 4, 2004, the PCRA court dismissed Appellant's third PCRA petition. This Court affirmed and our Supreme Court denied allowance of appeal. ***Commonwealth v. Maxwell***, 864 A.2d 580 (Pa. Super. 2004) (unpublished memorandum), *appeal denied*, 875 A.2d 1074 (Pa. 2005).

---

[5] Appellant's second PCRA petition filed in May 2000 raised multiple claims, including a challenge to the racial composition of his jury pursuant to ***Batson***. ***See*** PCRA Court Opinion, 3/27/18, at 3.

On August 20, 2012, Appellant, acting *pro se*, filed this, his fourth, PCRA petition. Counsel was appointed and filed an amended petition on September 7, 2016. The petition alleged that Appellant was entitled to collateral relief because the prosecutor in 1984 violated Appellant's right to a fair and impartial jury when he intentionally excluded African-American jurors from the venire. **See** Amended PCRA Petition, 9/7/16, at para. 39.2.1; **see also** 42 Pa.C.S.A. § 9543(a)(2)(i) (PCRA petitioners eligible for collateral relief where they plead and prove by a preponderance of the evidence that their convictions arose from "[a] violation of the Constitution of this Commonwealth or the Constitution or laws of the United States which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place[]").

Because Appellant filed his fourth petition so many years after his judgment of sentence became final, his counseled petition invoked the newly-discovered facts exception to the PCRA's time-bar found at 42 Pa.C.S.A. § 9545(b)(1)(ii). The newly-discovered fact alleged in Appellant's petition involved a July 9, 2016 meeting between Appellant and his brother, Brian. The visit occurred at SCI-Camp Hill and was said to be their first one-on-one visit in 32 years. During the visit, Brian recalled for Appellant overhearing the prosecuting attorney tell a police officer at the 1984 trial that he did not think

there would be any African-Americans on the jury. *See* Amended PCRA Petition, 9/7/16, at para. 39.2.1.

The parties agreed to bifurcated proceedings. A jurisdictional hearing was to take place first, to be followed by a hearing on the merits in the event Appellant demonstrated the application of a timeliness exception. Pursuant to the parties' agreement, the Honorable Scott A. Evans of the Dauphin County Court of Common Pleas convened an evidentiary hearing on May 15, 2017 at which Appellant and Brian testified. Brian testified that he largely stopped speaking with Appellant following his arrest for the instant offenses and did not visit him in the Dauphin County Prison while awaiting trial in 1984. After Appellant was convicted, Brian occasionally spoke to Appellant *via* telephone, but those conversations were kept short. Brian also testified that he, along with other family members, visited Appellant on two occasions more than two decades ago; however, Brian's first one-on-one visit with Appellant occurred on July 9, 2016. During this visit, the two spoke about the prosecutor's comment. Brian testified that that he did not believe this statement had any relevance when he heard it and Appellant testified that he never heard this information before the July 9, 2016 meeting.

Judge Evans credited the testimony offered by Brian and Appellant and concluded that Appellant pled and proved the application of the

newly-discovered fact exception to the PCRA's timeliness requirement found at § 9545(b)(1)(ii). Thus, Judge Evans issued the following order:

> AND NOW, this 26th day of September, 2017, following an evidentiary hearing on the PCRA jurisdictional requirements held on May 15, 2017, and upon consideration of the Commonwealth's memorandum opposing PCRA jurisdiction, and [Appellant's] response to the Commonwealth's memorandum, it is hereby ORDERED that the jurisdictional requirements have been met. [The PCRA court] shall make a determination on the merits of the issues set forth in [Appellant's] PCRA petition.

PCRA Court Order, 9/26/17.

Owing to the fact that the prosecutor at Appellant's 1984 homicide trial was The Honorable Richard Lewis, who was by now the President Judge of the Dauphin County Court of Common Pleas, Judge Evans *sua sponte* requested recusal from further proceedings for himself along with all other judges on the Court of Common Pleas of Dauphin County. As a result, the Administrative Office of Pennsylvania Courts assigned an out-of-county judge, the Honorable John L. Braxton, Senior Judge, to conduct the substantive PCRA evidentiary hearing where Appellant was to have an opportunity to prove the merits of his **Batson** claim under 42 Pa.C.S.A. § 9543(a)(2)(i).

Judge Braxton convened a hearing on January 31, 2018 at which President Judge Lewis, Appellant, Brian, and Christine Arnold (the victim's widow) testified. After the evidentiary hearing, both Appellant and the Commonwealth submitted briefs. Rather than adjudicating Appellant's

*Batson* challenge under § 9543(a)(2)(i), Judge Braxton instead revisited the jurisdictional determination reached by Judge Evans. On March 27, 2018, Judge Braxton issued notice of his intent to dismiss Appellant's petition. *See* PCRA Court Order, 3/27/18. In an accompanying opinion, Judge Braxton explained that Appellant failed to plead and prove the applicability of the newly-discovered fact exception under § 9545(b)(1)(ii) because Brian's testimony lacked credibility. *See* PCRA Court Opinion, 3/27/18, at 7. Appellant responded to Judge Braxton's notice of intent to dismiss on April 11, 2018 and, thereafter, Judge Braxton issued an order dismissing Appellant's fourth petition on May 23, 2018. Appellant filed a timely appeal and both Appellant and the PCRA court complied with Pa.R.A.P. 1925.[6]

On April 23, 2019, a three-judge panel of this Court issued a ruling that vacated Judge Braxton's May 23, 2018 order and remanded this matter for

---

[6] In his Rule 1925(a) opinion, Judge Braxton offered several reasons to support his decision to revisit the jurisdictional issue previously decided by Judge Evans. Judge Braxton explained that "the recusal of the Dauphin County bench render[ed Judge Evans'] decision void," that the timeliness of Appellant's PCRA petition was a threshold jurisdictional issue that needed to be addressed, that Judge Evans failed to offer a cogent analysis for his ruling, and that the prior hearing before Judge Evans focused on the "due diligence" aspect of the newly-discovered fact exception rather than the discovery of a new "fact" for purposes of the provision. *See* PCRA Court Opinion, 8/15/18, at 6.

further proceedings before the PCRA court. Two judges on that panel found that the coordinate jurisdiction rule[7] barred Judge Braxton from re-examining Judge Evans' jurisdictional determination. A third judge, however, concluded that because Appellant raised **Batson** challenges in prior post-conviction petitions, in particular his second PCRA petition filed on May 24, 2000, Brian's July 9, 2016 statement constituted only a newly-discovered source of information that corroborated previously known facts and claims. As such, it did not confer jurisdiction over the instant petition. We granted the Commonwealth's request to review the petite panel's determination. After careful review, we affirm the PCRA court's dismissal of Appellant's fourth petition.

The question we confront in this appeal is whether Brian's July 9, 2016 statement triggered the timeliness exception set forth at § 9545(b)(1)(ii), commonly referred to as the newly-discovered fact exception. Appellate review of a PCRA court's dismissal of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the

_____

[7] In general terms, the coordinate jurisdiction rule holds that judges of coordinate jurisdiction should not overrule each other's decisions. **See Zane v. Friends Hospital**, 836 A.2d 25, 29 (Pa. 2003). The purpose of the rule is to preserve the expectations of the litigants, ensure uniformity of decisions, promote judicial economy, and bring finality to trial court proceedings. **See id.**

record and free of legal error." ***Commonwealth v. Miller***, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Lawson***, 90 A.3d 1, 4 (Pa. Super. 2014) (citations omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." ***Commonwealth v. Hickman***, 799 A.2d 136, 140 (Pa. Super. 2002) (citation omitted). In contrast, we review the PCRA court's legal conclusions *de novo*. ***Commonwealth v. Henkel***, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*), *appeal denied*, 101 A.3d 785 (Pa. 2014).

It is uncontested that Appellant's petition is untimely. Briefly, the Pennsylvania Supreme Court dismissed Appellant's direct appeal on December 21, 1989, when it learned he escaped from custody. Thereafter, Appellant did not seek review with the Supreme Court of the United States. Thus, his judgment of sentence became final for purposes of the PCRA on or around March 21, 1990, upon the expiration of the time for seeking further review. ***See*** U.S.Sup.Ct.R. 13 (allowing 90 days for filing petition for *certiorari* with United States Supreme Court); 42 Pa.C.S.A. § 9545(b)(3). Appellant's fourth petition was filed on August 20, 2012, more than two decades after his judgment of sentence became final. As such, Appellant needed to invoke an

exception to the PCRA's time-bar to obtain review of the merits of his ***Batson*** claim.

To this end, Appellant elected to pursue the newly-discovered fact exception to establish jurisdiction, which is set forth at § 9545(b)(1)(ii).[8] Specifically, Appellant alleges that, on July 9, 2016, he learned through Brian that the district attorney told a police officer during Appellant's trial that he did not believe that any African-Americans would serve on the jury. Brian's statement, however, is not a new "fact" as contemplated by the PCRA.

_____

[8] The statutory exceptions found at 42 Pa.C.S.A. § 9545 are as follows:

> (i)the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii). Any petition invoking one of the exceptions to the time bar must be filed within 60 days of the date the claim could have been presented. 42 Pa.C.S.A. § 9545(b)(2). Effective December 24, 2018, § 9545(b)(2) was amended to provide that petitions invoking an exception must be filed within one year of the date the claim could have been presented. ***See*** Act 2018, Oct. 24, P.L. 894, No. 146. However, as the amended provision applies only to claims arising on or after December 24, 2017, the original 60-day time period governs in this case.

It is well settled in Pennsylvania that the focus of the exception found at § 9545(b)(1)(ii) is on newly-discovered facts, not on newly-discovered or newly-willing sources that corroborate previously known facts or previously raised claims. *See Commonwealth v. Robinson*, 185 A.3d 1055, 1064 n.4 (Pa. Super. 2018) (*en banc*), *appeal denied*, 192 A.3d 1105 (Pa. 2018). Our Supreme Court previously explained the newly-discovered fact exception under § 9545(b)(1)(ii) as follows:

> [Section 9545(b)(1)(ii)] "requires petitioner to allege and prove that there were 'facts' that were 'unknown' to him" and that he could not have ascertained those facts by the exercise of "due diligence." *Commonwealth v. Bennett*, 930 A.2d 1264, 1270-1272 (Pa. 2007). The focus of [§ 9545(b)(1)(ii) is "on [the] newly discovered facts, not on a newly discovered or newly willing source for previously known facts." *Commonwealth v. Johnson*, 863 A.2d 423, 427 (Pa. 2004) [(abrogated on other grounds)]. In *Johnson*, [our Supreme Court] rejected the petitioner's argument that a witness['] subsequent admission of alleged facts brought a claim within the scope of [§ 9545(b)(1)(ii)] even though the facts had been available to the petitioner beforehand. Relying on *Johnson*, [our Supreme Court subsequently] held that an affidavit alleging perjury did not bring a petitioner's claim of fabricated testimony within the scope of [§ 9545(b)(1)(ii)] because the only "new" aspect of the claim was that a new witness had come forward to testify regarding the previously raised claim. [*Commonwealth v.*] *Abu–Jamal*, [941 A.2d 1263, 1267 (Pa. 2008)]. Specifically, [the Court] held that the fact that the petitioner "discovered yet another conduit for the same claim of perjury does not transform his latest source into evidence falling within the ambit of [section] 9545(b)(1)(ii)." *Id.* at 1269.

*Commonwealth v. Marshall*, 947 A.2d 714, 720 (Pa. 2008).

The certified record here reveals that Appellant raised ***Batson***-type challenges in at least three prior post-conviction filings: (1) a state *habeas corpus* petition filed September 22, 1996; (2) a second federal *habeas corpus* petition filed November 3, 1997; and, (3) a second PCRA petition filed May 24, 2000. ***See*** Amended PCRA Petition, 9/7/16, at para. 39.3.2. Thus, as far back as May 2000 and perhaps as early as 1996, Appellant advanced contentions that mirror his present ***Batson*** claim. The instant petition alleged:

> On May 24, 2000, [Appellant] filed his second PCRA petition. [Appellant] asserted his petition was timely filed due to interference by government officials. **[Appellant] advanced multiple claims, most significantly is the claim of ineffective assistance of counsel for failing to object and require the District Attorney provide race-neutral reasons for his use of peremptory challenges on black potential jurors under *Batson v. Kentucky*.** The [PCRA c]ourt never appointed an attorney to represent [Appellant]. This petition was dismissed without a hearing on September 18, 2001. The [PCRA] court held that "[i]ssues 2-4, relating to the alleged denial of the right to an impartial jury were raised and decided in [Appellant's] first PCRA and may not be re-litigated herein." **Issue 4 was [Appellant's] claim that his attorney was ineffective for failing to object under *Batson v. Kentucky*.**[]

Amended PCRA Petition, 9/7/16, at para. 29 (emphasis added). In view of these allegations, Brian's statement, even if credited by a factfinder, is merely a new source of information that confirmed facts and claims of which Appellant was already aware and which he previously raised.

There is no room to suggest in this case that Brian's statement falls within the scope of § 9545(b)(1)(ii) as a "new fact" or "new theoretical variant" of a previously raised claim. Although Appellant stresses that he did not learn of Brian's statement before July 9, 2016, he does not rebut the fact that he previously raised **Batson**-type challenges in prior post-conviction submissions. Indeed, the petition itself makes clear that, as early as September 1996 (and certainly no later than May 2000), Appellant possessed facts which enabled him to formulate and pursue claims alleging that the district attorney improperly used peremptory challenges to exclude blacks from the jury. As such, the petition establishes that Brian's July 9, 2016 statement did not bring anything "new" to Appellant's attention, much less bring Appellant's claim of racially tinged jury selection practices within the scope of § 9545(b)(1)(ii). The **only** "new" aspect of Appellant's claim was that a newly-willing testimonial source had come forward to corroborate a legal theory Appellant raised decades before. **See Abu-Jamal**, 941 A.2d at 1267. Put another way, the fact that Appellant discovered through Brian yet another confirmatory source for the same claim he raised in no fewer than three prior post-conviction filings does not transform Appellant's latest source of information into the type of fact falling within the scope of § 9545(b)(1)(ii). **See Marshall**, 947 A.2d at 721-722 (newly-discovered corroborative sources

of publicly known discriminatory jury selection practices do not bring underlying discrimination claim within scope of § 9545(b)(1)(ii)).

For each of the foregoing reasons, we conclude that Brian's July 9, 2016 statement served merely as a new corroborative source for previously known facts and claims. As such, it could not satisfy the newly-discovered facts exception to the PCRA's time-bar and it did not confer jurisdiction over Appellant's fourth petition. Because the PCRA court lacked jurisdiction, it properly dismissed the petition as untimely.[9]

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/30/2020

_____

[9] Since Brian's statement cannot, as a matter of law, constitute a new "fact" as contemplated by § 9545(b)(1)(ii), the coordinate jurisdiction rule was not an obstacle to Judge Braxton's re-assessment of the initial erroneous jurisdictional ruling. *See*, *e.g.*, ***Ryan v. Berman***, 813 A.2d 792, 795 (Pa. 2002) (acknowledging that departure from the coordinate jurisdiction rule is generally permitted where a prior holding is clearly erroneous and following it would create manifest injustice).