J-S02002-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES GRAHAM | : | |
| | : | |
| Appellant | : | No. 22 EDA 2023 |

Appeal from the PCRA Order Entered December 1, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0010428-2007

BEFORE:  LAZARUS, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:              **FILED FEBRUARY 27, 2024**

James Graham appeals from the order, entered in the Court of Common Pleas of Philadelphia County, dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-46.  After review, we affirm.

This Court has previously adopted the following factual summary:

On March 12, 2007, at approximately two o'clock p.m., a group of basketball players arrived at Dickinson Square Park, a neighborhood [park] with a basketball court, a recreation center, and a playground, surrounded by 3rd Street, 4th Street, Morris Street, and Tasker Street.  George Ocasio [] and Justin Davis [] arrived in Ocasio's white Mercury Sable and parked on Morris Street.  Mark Wilson [], David Stokes [], Terrell Drummond [], and [Albert] Hughes arrived together in Wilson's silver Oldsmobile Intrigue.  They parked directly behind Ocasio's car on Morris Street.  William Duncan [] parked his blue Grand Marquis directly behind Wilson's car.

---

[*] Former Justice specially assigned to the Superior Court.

Duncan, Ocasio, and Davis were from 5th Street and played for one team. Stokes, Drummond, and Wilson were from 7th Street and played for the other team. Most of the players had known each other for years. Each team bet $300 on the game.

Markel White [], [Graham], and [Graham]'s brother, Kareem Graham ("Kareem"), all from 5th Street, sat next to the basketball court and watched the game, along with Hughes[, who was] from 7th Street. There were many other people in the park at that time as well—some watching the game, others playing on the playground.

The game went on for approximately twenty minutes until a foul call started an argument between the two teams. Stokes and [Graham] were verbally arguing when Stokes asked Hughes to pass him his gun. When Hughes passed Stokes a gun, people began to leave the basketball court. Stokes, Hughes, and Drummond walked back to Wilson's Oldsmobile. Stokes entered the passenger seat, while the other two men sat in the backseat, Hughes behind the driver seat, and Drummond behind the passenger seat.

From approximately 50-55 yards away from the car, on a pathway in Dickinson Square Park, [Graham] pulled out a gun, aimed it with two hands at the Oldsmobile and fired twice at the car. Two fired cartridge casings were found on the pathway where witnesses placed [Graham].

One of the shots went through the glass window of the Oldsmobile and hit Hughes in his head. He was taken to the hospital and[,] on March 13, 2007, he was pronounced dead as a result of this gunshot wound. The Medical Examiner [found] stippling on Hughes' face[,] which he testified could be a result of a close range shot or due to the shattered car window glass.

On March 13, 2007, March 15, 2007, and March 19, 2007, respectively, Duncan, White, and Davis gave statements to detectives identifying [Graham] as the shooter.

On March 16, 2007, an arrest warrant was issued for [Graham] and the Fugitive Squad went to his house that morning at 6 a.m. When police saw a man fitting [Graham]'s description, he showed them identification with the name "Malik Lamore Graham" and claimed that he was [Graham]'s brother. However, the police

investigated further, [they determined that] this man was[,] in fact[, Graham,] himself.  He was arrested at this time.  On May 17, 2007, Kareem [] told a social worker at his juvenile detention facility that he had witnessed his brother murder someone.  The social worker called [h]omicide [h]eadquarters and Kareem gave a statement identifying [Graham] as the shooter on March 12.

***Commonwealth v. Graham***, 239 A.3d 53 (Pa. Super. 2020) (Table).

Graham proceeded to a jury trial in 2008, which resulted in a hung jury. Following a second trial, the jury convicted Graham of third-degree murder and possessing instruments of crime.  The trial court sentenced Graham to an aggregate term of 17½ to 45 years' imprisonment.  Graham filed an appeal, and, on October 8, 2010, this Court affirmed Graham's judgment of sentence. ***See Commonwealth v. Graham***, 15 A.3d 520 (Pa. Super. 2010) (Table). Graham filed a petition for allowance of appeal, which our Supreme Court denied on March 8, 2011.

Over the next 10 years, Graham filed four PCRA petitions, all of which were dismissed.  ***See Commonwealth v. Graham***, 239 A.3d 53 (Pa. Super. 2020) (Table) (denying Graham's third PCRA petition and summarizing factual and procedural history); ***see also*** PCRA Court Opinion, 12/1/22, at 2 (indicating Graham had filed fourth PCRA petition, and appealed, but withdrew his appeal on May 25, 2022).

On July 20, 2022, Graham filed, through his counsel, the instant PCRA petition, his fifth, in which he argued that the arrest of former Philadelphia Detective James Pitts constituted a newly-discovered fact.  On October 26, 2022, Graham filed a supplemental PCRA petition arguing that he was entitled to a new trial based upon a newly-discovered fact in the form of a new witness,

- 3 -

Antonio Jardine. In his supplemental PCRA petition, Graham included a supplemental memorandum of law and an unsworn certification containing Jardine's purported testimony. On November 3, 2022, the PCRA court issued notice of its intent to dismiss Graham's petition pursuant to Pa.R.Crim.P. 907. Graham did not file a response. On December 1, 2022, the PCRA court dismissed Graham's petition.

Graham filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[1] Graham now raises the following claims for our review:

> I. Did the PCRA court abuse its discretion in failing to find that [] Pitts' arrest and the proposed testimony of [] Jardine [] constituted "new" evidence for the purpose of the PCRA statute's time bar exception of 4[2] Pa.C.S.A. § 9545[(b)(1)(ii)]?
>
> II. Did the PCRA court abuse its discretion in failing to find that [Graham] suffered prejudice as a result of the exclusion of Pitts' arrest record and Jardine's testimony from the PCRA record?

Brief for Appellant, at 2.

Before addressing Graham's issues on appeal, we must determine whether his PCRA petition was timely filed and, if not, whether he has satisfied an exception to the PCRA time bar. Any PCRA petition "shall be filed within a year of the date judgment becomes final." 42 Pa.C.S.A. § 9545(b)(1). A

_____

[1] On May 18, 2023, this Court entered an order dismissing Graham's appeal for failure to file a brief. *See* Order, 5/18/23, at 1. On June 1, 2023, Graham's counsel filed an application for reconsideration. *See* Application for Reconsideration, 6/1/23, at 1-2. On June 7, 2023, this Court granted Graham's motion for reconsideration, vacated the May 18, 2023 order, and reinstated the briefing schedule. *See* Order, 6/7/23, at 1. Graham's counsel subsequently filed a timely brief.

judgment of sentence becomes final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking review." *Id.* at 9545(b)(3). The PCRA's timeliness requirements are jurisdictional in nature, and a court may not address the merits of the issues raised if the PCRA petition was not timely filed. *Commonwealth v. Albrecht*, 994 A.2d 1091, 1093 (Pa. 2010).

Instantly, Graham's judgment of sentence became final, for purposes of the PCRA, on June 6, 2011, when the time expired for him to file a writ of certiorari in the United States Supreme Court. *See* 42 Pa.C.S.A. § 9545(b)(1)-(3); Sup.Ct.R. 13. Consequently, Graham's instant PCRA petition, filed on July 20, 2022, is patently untimely.

However, Pennsylvania courts may consider an untimely petition if the petitioner can explicitly plead and prove one of the three exceptions set forth at 42 Pa.C.S.A. §§ 9545(b)(1)(i)-(iii). Those three exceptions are as follows:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

*Id.* Any petition invoking one of these exceptions "shall be filed within one year of the date the claim could have been presented." *Id.* at § 9545(b)(2).[2] "The PCRA petitioner bears the burden of proving the applicability of one of the exceptions." *Commonwealth v. Spotz*, 171 A.3d 675, 678 (Pa. 2017).

Here, Graham purports to invoke the newly-discovered facts exception. First, he argues that Pitts' arrest and subsequent perjury charge constitute a newly-discovered fact that satisfies the exception to the PCRA time-bar. *See* Brief for Appellant, at 8-12. We disagree.

The newly-discovered facts exception to the PCRA time bar "renders a petition timely when the petitioner establishes that the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." *Commonwealth v. Small*, 238 A.3d 1267, 1271 (Pa. 2020) (quotation omitted). A PCRA court must first determine "whether the facts upon which the claim is predicated were unknown to the petitioner." *Id.* at 1282 (quotation marks omitted). "The focus of the exception is on [the] newly[-]discovered facts, not on a newly[-]discovered or newly[-]willing source for previously known facts."

_____

[2] We observe that section 9545(b)(2) was amended on October 24, 2018, effective in 60 days (*i.e.*, December 24, 2018), extending the time for filing from 60 days of the date the claim could have been first presented, to one year. The amendment applies to claims arising on December 24, 2017, or thereafter. *See* Act 2018, Oct. 24, P.L. 894, N. 146, § 3. Instantly, as we discuss *infra*, Graham was aware of Jardine and his purported testimony as early as March 12, 2007, and, therefore, the original 60-day limit applies to Graham's second claim that Jardine's purported testimony would constitute a newly-discovered fact.

- 6 -

*Commonwealth v. Burton*, 158 A.3d 618, 629 (Pa. 2017) (internal citation and quotation marks omitted). In other words, the fact that a petitioner has "discovered yet another conduit" for a claim previously presented "does not transform his latest source into evidence falling within the ambit of section 9545(b)(1)(ii)." *Commonwealth v. Maxwell*, 232 A.3d 739, 745 (Pa. Super. 2020) (en banc) (citation omitted). If the PCRA court concludes that the facts were unknown, then the PCRA court must next examine whether "the facts could have been ascertained by the exercise of due diligence, including an assessment of the petitioner's access to public records." *Small*, 238 A.3d at 1271. Further, "[d]ue diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have obtained the new facts earlier with the exercise of due diligence. This rule is strictly enforced." *Commonwealth v. Monaco*, 996 A.2d 1076, 1080 (Pa. Super. 2010).

Here, it is clear that Graham was aware of Pitts' misconduct in coercing witness statements since at least 2019. *See* PCRA Court Opinion, 12/1/22, at 6 (summarizing Graham's prior PCRA claims raising Pitts' misconduct); *see also Commonwealth v. Graham*, 239 A.3d 53 (Pa. Super. 2020) (Table) (addressing timeliness of Graham's challenge to Pitts' misconduct). Therefore, Pitts' arrest for perjury in an unrelated case merely constitutes a new "conduit" presenting the same evidence. *See Maxwell*, *supra*.

Consequently, Graham cannot satisfy the newly-discovered fact exception, and the PCRA court did not err in dismissing this claim.[3]

In his second claim, Graham argues that Jardine is a new witness who would testify that Graham could not have been the shooter because Graham was with Jardine at the time of the shooting. *See* Brief for Appellant, at 8-12. Graham contends that Jardine's new testimony satisfies the newly-discovered fact exception because Jardine refused to come forward until October 10, 2022, when Jardine spoke with Graham's counsel. *See id.* at 10-11. Graham acknowledges that police initially interviewed Jardine, but asserts that Jardine attempted to avoid involvement in the case because Jardine did not want to jeopardize his basketball scholarship to Syracuse University. *See id.* Graham argues that Jardine is not merely a new source of a previously known fact, but is the only source. *See id.* at 12. Graham claims that "he was unable to provide any evidence [of his alibi] because of Jardine's unavailability." *Id.* (emphasis omitted). Graham argues that he acted with due diligence in discovering Jardine's testimony because, due to Jardine's avoidance of law enforcement, Jardine was unavailable at all relevant times

---

[3] Moreover, we observe that even if we could address the merits of this claim, we would be constrained to find that it is meritless. As we stated in *Graham*, *supra*, Pitts only interviewed Duncan. *See Graham*, *supra*. Additionally, the jury heard, from Duncan, that Pitts had coerced his police statement. Nevertheless, there were several other witnesses, interviewed by different detectives, who identified Graham as the shooter. *See* PCRA Court Opinion, 12/1/22, at 6-7.

until he agreed to provide a statement to PCRA counsel on October 10, 2022. *See id.*

The Commonwealth, in its brief, agrees with Graham, and asks that we find Graham's PCRA petition meets the newly-discovered fact exception. *See* Appellee's Brief, at 26-28. The Commonwealth concedes that Graham could not have discovered Jardine's testimony until October 10, 2022, when Jardine agreed to speak with Graham's counsel. *See id.* The Commonwealth points out that Jardine, aside from his initial interview with police, was entirely uninvolved with the investigation and did not appear at any court hearings. *See id.* at 27-28. Consequently, the Commonwealth requests that we find Graham's PCRA petition timely filed, and remand for an evidentiary hearing, at which Jardine may testify to determine whether his testimony would satisfy the after-discovered evidence test. *See id.*

In its opinion, the PCRA court concluded that Jardine's testimony did not satisfy the newly-discovered fact exception, and determined that Graham's PCRA petition was untimely. *See* PCRA Court Opinion, 12/1/22, at 8-12. In so finding, the PCRA court noted that Graham would have known if he was with Jardine at the time of the shooting and, therefore, Jardine's testimony could not have been a newly-discovered fact. *See id.* at 8, 12. After review, we agree with the PCRA court's determination.

Assuming *arguendo* that Jardine's testimony is true, Graham was with Jardine, was aware of Jardine's existence as a witness, and knew that Jardine would be able to provide him with an alibi. *See id.* at 8, 12. Additionally,

- 9 -

Graham is required to demonstrate that he acted with due diligence in securing Jardine's testimony. **See Monaco**, **supra**. However, Graham's bald averments that Jardine avoided police contact, and did not appear "at all relevant times," are insufficient. Graham does not point to any attempts by him or his prior counsel to secure Jardine's testimony at any time prior to July 20, 2022. **See** Unsworn Certification of Counsel, 10/12/22, at 1-3 (detailing Jardine's proposed testimony and PCRA counsel's due diligence efforts).[4] Indeed, the record indicates that Jardine gave an initial statement to police on March 13, 2007, after which Jardine was entirely uninvolved in the case. Fifteen years have passed from the time Jardine gave his initial statement until October 12, 2022, with no evidence of any diligence exercised by or on behalf of Graham. Consequently, we conclude that the PCRA court did not err in dismissing this claim and we affirm the PCRA court's order dismissing Graham's PCRA petition. **See Monaco**, **supra**.

Order affirmed.

---

[4] We note that current PCRA counsel has represented Graham since July 20, 2022, and the unsworn certification only contains his actions of due diligence since becoming counsel. **See id.**

- 10 -

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary


Date: 2/27/2024