J-S37025-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| PETER BIENVIENIDO ROJAS | : | |
| | : | |
| Appellant | : | No. 826 EDA 2024 |

Appeal from the PCRA Order Entered March 1, 2022
In the Court of Common Pleas of Lehigh County Criminal Division at
No(s): CP-39-CR-0002191-2009

BEFORE:   DUBOW, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:            **FILED JANUARY 23, 2026**

Peter Beinvienido Rojas appeals from the order denying his serial petition filed pursuant to the Post Conviction Relief Act.  42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The pertinent facts and prolonged procedural history may be summarized as follows.  On May 28, 2009, the body of Mark Holdren was discovered in Allentown, Pennsylvania.  He had been stabbed multiple times.  Later that day, Rojas voluntarily went to the Allentown police headquarters to report what he claimed was an attempted robbery.  After the police realized that the incident may be connected to Holdren's homicide, two detectives interviewed Rojas.  The interview was tape recorded.  During this interview, Rojas reported that he was hit on the head from behind and pulled out a razor

---

[*] Former Justice specially assigned to the Superior Court.

knife in self-defense. Rojas told the detectives he swung a couple of times, but was not sure if his assailant was injured. Once the attacker fell to the ground, Rojas left the area. Rojas then showed the detectives some minor injuries to his head that he claimed occurred during the attack. Throughout the interview, Rojas changed his version of events.

In fact, near the conclusion of the interview, Rojas told the detectives that he actually knew Holdren from the streets. He further explained that he was taking Holdren to a location to buy narcotics, with the expectation that the victim would either give Rojas money or a portion of the drugs in return. Rojas told the detectives that he never saw Holdren with a weapon. He further revealed that he went through Holdren's pockets when he was on the ground and took an ACCESS card and a pill bottle. Police later recovered from a public trash can the card as well as the knife that Rojas had used.

The next day, police charged Rojas with criminal homicide and robbery. Following the denial of a suppression motion, a jury trial was held in March 2011, and Rojas was convicted of second-degree murder and robbery. Thereafter, the trial court sentenced Rojas to life imprisonment for the murder conviction. Rojas appealed. On February 13, 2013, this Court affirmed his judgment of sentence, and, on August 14, 2013, denied Rojas' petition for allowance of appeal. *Commonwealth v. Rojas*, 68 A.3d 362 (Pa. Super. 2013) (non-precedential decision), *appeal denied*, 72 A.3d 603 (Pa. 2013).

In 2014, Rojas filed a timely *pro se* PCRA petition. The PCRA court appointed counsel, who filed an amended petition. Following an evidentiary

- 2 -

hearing, the PCRA court denied the petition, and, on April 28, 2017, this Court affirmed the order denying Rojas post-conviction relief. ***Commonwealth v. Rojas***, 169 A.3d 1224 (Pa. Super. 2017) (non-precedential decision). In 2017, Rojas also filed a *pro se* petition for writ of *habeas corpus*, which was denied. ***Rojas v. Capozza***, 2017 U.S. Dist. LEXIS 193474 (E.D. Pa. 2017).

On April 6, 2020, Rojas filed the PCRA petition at issue. The PCRA court appointed counsel, who filed a motion to withdraw and a no-merit letter pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). Rojas filed a *pro se* supplemental petition and a *pro se* response to PCRA counsel's no-merit letter. On February 8, 2022, the PCRA court granted counsel's motion to withdraw and issued a Criminal Rule 907 notice of its intent to dismiss Rojas' second petition because it was untimely filed. Rojas did not file a timely response. By order entered March 1, 2022, the PCRA court dismissed Rojas' second petition. Rojas did not file an appeal.

However, on July 11, 2022, Rojas filed a *pro se* "Petition for Reinstatement of PCRA Appeal Rights *Nunc Pro Tunc"* in which he sought reinstatement of his appellate rights based upon his claim that he did not receive a copy of the March 2022 dismissal order within the time to appeal. Treating this filing as a serial petition, the PCRA court dismissed it after issuing Rule 907 notice.

Rojas appealed. On December 14, 2023, this Court vacated the PCRA court's dismissal order and remanded the case for further proceedings.

***Commonwealth v. Rojas***, 311 A.3d 582 (Pa. Super. 2023) (non-precedential decision). On February 16, 2024, the PCRA court reinstated Rojas' right to appeal the dismissal of his untimely second petition. The PCRA court also appointed new counsel, who filed a timely notice of appeal. Thereafter, in this Court, Rojas sought to proceed *pro se*. Following remand for a ***Grazier***[1] hearing, the PCRA court permitted him to do so.

Rojas raises six substantive issues on appeal. Before addressing them, however, we must first determine if the PCRA court correctly concluded that his 2020 petition was untimely. Generally, a petition for relief under the PCRA, including a second or subsequent petition, must be filed within one year of the date the judgment is final, unless the petition alleges, and the petitioner proves, that an exception to the time limitation for filing the petition, set forth at 42 Pa.C.S.A. sections 9545(b)(1)(i), (ii), and (iii), is met.[2] A PCRA petition

_____

[1] ***See Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

[2] The exceptions to the timeliness requirement are:

> (i) the failure to raise the claim previously was the result of interference of government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States.

> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court

*(Footnote Continued Next Page)*

invoking one of these statutory exceptions must be filed within one year of the date the claims could have been presented. 42 Pa.C.S.A. § 9545(b)(2). Asserted exceptions to the time restrictions for a PCRA petition must be included in the petition, and may not be raised for the first time on appeal. ***Commonwealth v. Furgess***, 149 A.3d 90 (Pa. Super. 2016).

Here, Rojas' judgment of sentence became final on November 12, 2013, ninety days after our Supreme Court denied his petition for allowance of appeal and the time for filing a writ of *certiorari* to the United States Supreme Court expired. ***See*** 42 Pa.C.S.A. § 9545(b)(3). Therefore, Rojas had until November 12, 2014, to file a timely petition. Because Rojas filed the petition in 2020, it is patently untimely, unless he has satisfied his burden of pleading and proving that one of the enumerated exceptions applies. ***See Hernandez***, ***supra***.

Rojas has failed to plead and prove the applicability of any of the PCRA's time-bar exceptions. Within his PCRA petition Rojas asserted that the newly-discovered evidence of an eyewitness renders his petition timely. According to Rojas, in December 2019, a fellow inmate, Jonathan Nunez, told Rojas that he had witnessed the incident for which Rojas was in prison. With this claim,

---

of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. §§ 9545(b)(1)(i), (ii), and (iii).

Rojas attempted to establish the PCRA's timeliness exception found at section 9545(b)(1)(ii).

> The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned of those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced. Additionally, the focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.
>
> The timeliness exception set forth at Section 9545(b)(1)(ii) has often mistakenly been referred to as the "after-discovered evidence" exception. This shorthand reference was a misnomer, since the plain language of subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of "after-discovered evidence." Rather, an initial jurisdictional threshold, Section 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts. Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered evidence claim.

*Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa. Super. 2015) (citations omitted).

Here, Rojas attached to his PCRA petition a handwritten "affidavit" from Jonathan Nunez as well as a notarized witness certification, both dated February 2, 2020. In the certification, Nunez stated:

> If this court schedules an evidentiary hearing to address the issue raised in [Rojas'] PCRA Petition, then I will testify as follows:
>
> On or about the end of May 2009, after having been at my cousin's house in the City of Allentown, at around 1:00AM or

- 6 -

1:30AM I started walking home on Turner Street. I then bumped into a known female called "Bree". I asked her to give me oral sex in exchange for $20.00 since I knew her to prostitute and smoke crack.

She agreed and we continue to walk down Turner down a walk path that leads to a secluded area down near a creek and a parking lot in order for her to perform the sex. While walking on the path I looked up the road, I believe the road is called Jute Street, and saw two people walking on the street.

One of them was taller and appeared to be white and the other one was a little shorter and appeared to be black. The taller one suddenly hit the other one on the back of his head. The one that got hit ran and stumbled to the ground while the taller one went after swinging. I then alerted Bree of what was going on. As soon as she looked she turned and started walking back the way we came from. She had panicked and ran off so I followed. I asked what was wrong and she said she ran off because she did not [want] to be around any trouble. I then asked here if she would still do what I asked her and she said yes but that she would not go down that way again. We then found an open garage in an ally up around Jordan Street where we had the sex. I then paid her and we walked up Turner till Fourth Street where I made a left to go home and she continued to walk up the street.

The incident I saw I never gave any thought nor did I ever know who the individuals involved were. One day I met [Rojas] at SCI Forest Law Library and after having met him and helped each other with learning the law and working on legal work, I learned that he was one of the individuals involved on that night.

I would have testified accordingly had I been called to testify concerning the above and I am still willing to testify accordingly if called to testify.

Witness Certification, 2/7/20, at 1-2.[3]

_____

[3] In his handwritten affidavit, Nunez provided a somewhat different version of the altercation. In this document, he stated that he had been drinking and smoking at his cousin's house and was walking home around 11:30 p.m. or 12:00 a.m. Upon seeing the incident, Nunez alleged that he told "Bri look
*(Footnote Continued Next Page)*

On June 4, 2021, the PCRA court held an evidentiary hearing. Our review of the record refutes Rojas' claim that the hearing was limited only to determining whether he acted with due diligence. Rojas' Brief at 17. Nunez testified and the court decided the newly-discovered claim on its merits.[4] We first note the test applied to after-discovered evidence. When discussing the test in the context of a PCRA appeal, our Supreme Court summarized:

> [W]e have viewed this analysis in criminal cases as comprising four distinct requirements, each of which, if unproven by the petitioner, is fatal to the request for a new trial. As stated, the four-part test requires the petitioner to demonstrate the new evidence: (1) could not have been obtained prior to the conclusion of trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted. The test applies with full force to claims arising under Section 9543(a)(2)(vi) of the PCRA. In addition, we have held the proposed new evidence must be producible and admissible.

**Commonwealth v. Small**, 189 A.3d 961, 972 (Pa. 2018) (citations omitted).

In addition, we note that credibility determinations are an integral part of determining whether a PCRA petitioner has presented after-discovered evidence that would entitle him to a new trial. **See**, **e.g.**, **Small**, 189 A.3d at

---

they are fighting. When I looked back the shorter man was trying to run away as the other chased him."

[4] When discussing the time-bar exception, the PCRA court did not mention due diligence, but we would agree that Rojas established due diligence by averring that he had no reason to know there was an eyewitness until his discussions with Nunez.

978-79 (remanding for the PCRA court to make relevant credibility determinations). We have stated, prior to granting a new trial based on after-discovered evidence, "a court must assess whether the alleged after-discovered evidence is of such a nature and character that it would likely compel a different verdict if a new trial is granted." **_Commonwealth v. Padillas_**, 997 A.2d 356, 365 (Pa. Super. 2010). "In making this determination, a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." **_Id._**

Here, the PCRA court found that Rojas' claim of after-discovered evidence failed because Nunez's testimony represented only a new source of already known facts. Rojas' claim that he acted in self-defense was presented at his jury trial by the arguments of defense counsel and the introduction of the statements Rojas made to the detectives during the tape-recorded interview. We agree. **_See_**, **_e.g._**, **_Commonwealth v. Maxwell_**, 232 A.3d 739, 745 (Pa. Super. 2020) (reiterating that the focus of the newly-discovered-fact exception to the PCRA's time bar "is on newly-discovered facts, not on newly-discovered or newly-willing sources that corroborate previously known facts or previously raised claims") (_en banc_).

In his brief, Rojas contends that Nunez's assertion that the victim was the initial aggressor is not merely corroborative of Rojas telling the detectives he acted in self-defense because it the certification "is of a higher grade and character than the evidence presented at trial." Rojas' Brief at 9. He provides

no other explanation. We do note however, that on cross-examination, Nunez agreed that he did not see the entire incident and his affidavit and witness certification differed slightly. *See* N.T., 6/4/21, at 55. Thus, having not seen the entire incident, Nunez was unaware that Rojas responded to this alleged aggressive act by stabbing the other man repeatedly and then taking items from the man's pockets.

Finally, even if Nunez's presented newly-discovered evidence, and it was of a "higher grade", Rojas would still be unable to establish that the after-discovered evidence would have entitled him to relief in the form of a new trial. We reach this conclusion, given the "overall strength of the evidence supporting [Rojas'] conviction." *Padillas*, *supra*.

Our review of the trial transcript supports the following summary of the evidence presented by the Commonwealth's witnesses:

> Contrary to Nunez's vague recollection as to the time and date of the incident he observed, the evidence here firmly established that [Rojas] murdered the victim on May 28, 2009, between 1:56 and 1:59AM. City cameras captured [Rojas] leading the victim into a darkened area where, by his own admission, he stabbed the victim repeatedly until the victim fell to the ground. [Rojas] admitted that he and the victim were together at that time because he was taking the victim to buy drugs. [Rojas] further admitted that while the victim lay on the ground bleeding, he went through the victim's pockets and took the victim's ACCESS card and bottle of methadone.
>
> ***
>
> [Rojas] admitted that he stabbed the victim until the victim fell to the ground and admitted to taking the items from the victim's pockets. He further admitted to discarding the items

along with the murder weapon and cleaning the blood from his clothes. Rojas' DNA was located on scene.

Commonwealth's Brief at 17-18. Additionally, expert testimony established that the stab wounds to the victim were numerous and supported the fact that the victim was acting in a defensive manner.

Indeed, in rejecting Rojas' challenge to the sufficiency of the evidence raised on direct appeal, we concluded:

> Viewed in a light most favorable to the Commonwealth, the evidence presented meets each element of the charged crimes. [Rojas] admitted to taking the victim to purchase cocaine. The victim died after being stabbed multiple times. [Rojas] acknowledged taking several items from the victim and, in a taped interview with police, stated that he robbed the victim after the victim attempted to rob him. Further, [Rojas'] later actions in disposing of evidence demonstrated a guilty mind.

*Rojas*, *supra* (non-precedential decision at 7).

In sum, we agree with the PCRA court's conclusion that Nunez's affidavit and certification merely amount to a new source of known facts. Moreover, given the overwhelming evidence of guilt, Rojas has failed to establish that his after-discovered evidence warrants a new trial.

Order affirmed.

Judge Dubow joins. PJE Stevens concurs in result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/23/2026

- 11 -