J-S30035-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
MARKEL DAVIS   :
  :
Appellant   :   No. 2234 EDA 2021

Appeal from the PCRA Order Entered October 4, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0014344-2013

BEFORE: BENDER, P.J.E., LAZARUS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:        **FILED APRIL 30, 2024**

Markel Davis ("Davis") appeals from the order dismissing his petition for

relief pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

The PCRA court summarized the factual background of this appeal as

follows:

> On September 9, 2013, at approximately 8 P.M., Rico Lofton[
> ("the victim")] . . . was watching the Eagles game at his
> girlfriend's house at 3018 Mifflin Street in Philadelphia. Upon
> hearing an argument in the street, the victim walked outside to
> see his girlfriend's fifteen-year-old brother, Carlos, arguing with
> [Davis] and his co-defendant, Nafeese Turner [("Turner")
> (collectively, the "defendants")]. The victim approached the
> defendants and discovered that they had provided Carlos with
> heroin and crack-cocaine to sell. The victim then took the drugs
> from Carlos's waistband and told the [defendants] that they would
> not get the drugs back. Turner responded, "who the F do you
> think you are," and thereafter the victim, [Davis], and Turner
> began arguing for approximately five minutes.

---

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

During said argument, the streetlights were on and [Davis] and Turner were standing side-by-side, approximately four feet away from the victim. [Davis] was wearing a black hoodie with a picture on the front and back[,] and Turner was wearing a plain black hoodie—neither [Davis's] nor Turner's faces were covered. [Davis] demanded of the victim, "[W]e want our shit back," to which the victim responded, "[Y]ou ain't getting your shit back." The victim subsequently told [defendants] that he was going to flush the drugs down the toilet. [Davis] then threatened, "[O]h, we got something for you[,]" and Turner added[,] "[S]ay no more."

Once the argument ended, [defendants] rode away, side-by-side, on their bicycles. The victim watched the two men ride away for a short time and then turned to walk towards Carlos. As the victim walked towards Carlos, he heard several gunshots and turned around to see a flash coming from [Davis's] direction. No one else was in the area near [Davis] and Turner when the shots were fired. One of the gunshots hit the victim in his right front bicep, and the bullet exited through the rear of the bicep.

The night of the shooting was not the only time that the victim had met [Davis] and Turner regarding Carlos's drug dealing. Approximately two weeks prior to the shooting, the victim's girlfriend's mother asked the victim to talk to Carlos because Carlos had been selling drugs. At that time, the victim had experience selling narcotics, as he had previously pled guilty to dealing drugs in South Philadelphia on two separate occasions. When the victim confronted Carlos, he learned that Carlos possessed some crack-cocaine, which he received from two men whom Carlos called "Duda" (Turner) and "Markel" ([Davis]). [Following these conversations, and prior to the shooting at issue in this case, t]he victim . . . met with [Davis] and Turner to discuss Carlos's drug dealing. Said meeting occurred during the day, with [Davis] and Turner standing side-by-side, faces uncovered, approximately four feet away from the victim. The victim asked [defendants] to leave Carlos alone, insisting that Carlos was too young to deal drugs and that Carlos must give the cocaine back to [defendants]. [Davis] responded that he respected the victim's request, and the victim, [Davis], and Turner then "fist [b]umped" and parted ways.

After being shot, the victim returned to his girlfriend's house at 3018 Mifflin Street, leaving a trail of blood on the floor of the house, as well as on his shoes. Shortly thereafter, Officers Robert

Ellis and Cyrus Pollard of the Philadelphia Department responded to the scene. Office[r] Ellis entered the house and saw the victim bent over, holding his arm, screaming and crying in pain. The victim stated to Officer Ellis that he was shot, and Officers Ellis and Pollard then drove the victim to the emergency room at the Hospital of the University of Pennsylvania in their police vehicle. During this car ride, Officer Pollard obtained a flash description of the shooters, indicating that the shooters were two black males wearing dark clothing, one of whom was approximately 5'10", 180 pounds, with a full beard.

Once at the hospital, Officer Pollard escorted the victim to the emergency room for treatment. During treatment, a package of drugs fell out of the victim's pocket. The package contained nine ziplock baggies of heroin, each stamped with the letters "mpire," and three yellow-tinted ziplock baggies containing crack-cocaine. The victim was then arrested for possession of said narcotics but was not questioned about the shooting that evening, as he was under medication.

At the hospital the following evening, Detective John Landis—an eleven[-]year veteran detective of the Philadelphia Police Department with nineteen years of service with the department—interviewed the victim about the shooting. Before speaking to the victim about the shooting, Detective Landis showed him two sets of photo arrays. According to Detective Landis, the victim, without hesitation, identified [Davis] as one of the shooters. During his interview with Detective Landis, the victim specifically stated that [Davis] was "the guy who shot [him] last night." The victim told Detective Landis that he recognized [Davis] because he had a gap in his teeth and that he knew [Davis] "had the gun because of the writing on the hoodie when [Davis] was firing at [him]."[2]

_____

[2] At trial, Davis's counsel ("trial counsel") argued the victim was unreliable and highlighted inconsistencies in the evidence surrounding the victim's identification of Davis as the person who shot him. *See* N.T., 5/9/14, at 91-95. Those inconsistencies included the victim's denial of his prior testimony that Davis and Turner walked, rather than rode bicycles, away before the shooting; whether the victim told officers whether the suspects had a beards; how long it took for the victim to identify Davis from the photo array; whether

*(Footnote Continued Next Page)*

PCRA Court Opinion, 3/11/24, at 1-4 (citations to the record and footnote omitted; some formatting altered). Approximately four days after the shooting, in the morning of September 13, 2013, police arrested Davis at his home and recovered a black hoodie with a picture and writing on the front and back.

A jury convicted Davis of aggravated assault and related offenses, and the court sentenced him to an aggregate term of twelve to twenty-four years of incarceration. This Court affirmed the judgment of sentence, and our Supreme Court denied allowance of appeal. ***Commonwealth v. Davis***, 153 A.3d 1103, 2016 WL 3198210 (Pa. Super. 2016) (unpublished memorandum), *appeal denied*, 168 A.3d 1268 (Pa. 2017).[3]

_____

the victim stated the black hoodie had orange writing on it; and the fact that Davis did not have a gap in his teeth. ***See*** N.T., 5/8/14, at 97-98, 189.

Based on the inconsistencies highlighted at trial, trial counsel requested an instruction that the jury receive the victim's identification with caution pursuant to former Pennsylvania Standard Suggested (Criminal) Jury Instruction ("Pa.SSJI") 4.07B and ***Commonwealth v. Kloiber***, 106 A.2d 820 (Pa. 1954) (a "***Kloiber*** instruction"). ***See*** N.T., 5/19/14, at 42-45. The trial court refused the defense's request and elected to issue an instruction based on former Pa.SSJI 4.07A. ***See id***. Trial counsel did not object. ***See id***.

[3] In his direct appeal, Davis repeatedly challenged the reliability of the victim's identification testimony claiming that the evidence was insufficient to support his convictions and the trial court erred in denying a motion to suppress the victim's identification. ***See Davis***, 2016 WL 3198210, at *8-12. When affirming, this Court concluded that the record did not support Davis's contention that the circumstances of the crime were such that the victim was unable to make a reliable identification of Davis for lack of opportunity. ***See id***. at *12. This Court did not address Davis's issue concerning a ***Kloiber*** instruction because it was waived. ***See id***. at *13.

- 4 -

Davis filed a timely *pro se* PCRA petition. The PCRA court appointed counsel ("PCRA counsel"), who filed an amended and a second amended petition. Davis raised three ineffective assistance of counsel claims asserting that trial counsel failed to: (1) object to the trial court's denial of a request for a **Kloiber** instruction; (2) highlight mitigating factors at sentencing; and (3) seek DNA and gunshot residue testing on the black hoodie found at Davis's residence. **See** Second Amended PCRA Petition, 3/6/19, unnumbered at 3. The Commonwealth filed a motion to dismiss, and Davis filed a response.[4] In June 2021, the PCRA court issued a Pa.R.A.P. 907 notice of its intent to dismiss the PCRA petition as meritless. Davis did not respond. The court dismissed the PCRA petition in October 2021. Davis timely appealed, but did not comply with the court's order to submit a Pa.R.A.P. 1925(b) statement.

A series of delays ensued over the next two years. This included: the dismissal of Davis's appeal for the failure to file a docketing statement in 2022; the reinstatement of the appeal; remands to determine whether PCRA counsel had abandoned Davis; the filing of briefs in 2023; and a remand for the filing of a Rule 1925(b) statement *nunc pro tunc* and a Rule 1925(a) opinion. In

_____

[4] In its motion to dismiss, the Commonwealth asserted that the hoodie had been destroyed in 2017 or 2018 because it was no longer necessary for prosecution. **See** Motion to Dismiss, 5/29/20, at 11 and Exhibit A. Although Davis filed a response, he did not acknowledge the destruction of the hoodie or otherwise seek leave to amend his petition to address the destruction of the hoodie. See Response to Motion to Dismiss, 3/18/21, at 3-4, 8-10. On appeal, Davis now discusses the destruction of the hoodie in terms of spoliation. **See** Davis's Brief at 11-12. Because Davis did not raise any issues concerning the destruction of the hoodie in the PCRA court, we will not address them on appeal. **See** Pa.R.A.P. 302(a).

December 2023, PCRA counsel filed a Rule 1925(b) statement. The PCRA court filed a responsive Rule 1925(a) opinion.

Davis raises the following issues for our review:

1. Whether trial counsel committed ineffective assistance of counsel by failing to object to the trial court's decision to not give a ***Kloiber*** charge to the jury and . . . agree[ing] to the charge that was given.

2. Whether trial counsel committed ineffective assistance of counsel by failing to emphasize [Davis's] lack of mental ability and his proclivity to be a follower during his sentencing hearing.

3. Whether trial counsel committed ineffective assistance of counsel by failing to request a DNA test or a [gunshot residue] . . . test upon a black hoodie that the Commonwealth seized from [Davis's] residence and then offered testimony about at trial.

Davis's Brief at 3 (some capitalization omitted).

Our standard of review of review is well settled:

Appellate review of a PCRA court's dismissal of a PCRA petition is limited to the examination of whether the PCRA court's determination is supported by the record and free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding. In contrast, we review the PCRA court's legal conclusions *de novo.*

***Commonwealth v. Maxwell***, 232 A.3d 739, 744 (Pa. Super. 2020) (*en banc*) (internal citations and quotation marks omitted). Further, a "PCRA court's credibility findings are to be accorded great deference, and where supported by the record, such determinations are binding on a reviewing court." ***Commonwealth v. Williams***, 141 A.3d 440, 452 (Pa. 2016) (internal citation and quotation marks omitted).

With respect to claims of ineffective assistance of counsel,

counsel is presumed to have been effective and [ ] the petitioner bears the burden of proving counsel's alleged ineffectiveness. To overcome this presumption, a petitioner must establish that: (1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different. A PCRA petitioner must address each of these prongs on appeal. A petitioner's failure to satisfy any prong of this test is fatal to the claim.

*Commonwealth v. Wholaver*, 177 A.3d 136, 144 (Pa. 2018) (internal citations and quotation marks omitted). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim." *Commonwealth v. Taylor*, 933 A.2d 1035, 1042 (Pa. Super. 2007) (internal citation and quotation marks omitted). The PCRA court may dismiss a petition without a hearing when the court can determine from the record that there are no genuine issues of material fact. *See Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008).

In his first issue, Davis asserts trial counsel was ineffective for failing to challenge the trial court's refusal to issue a requested *Kloiber* instruction.

The following principles govern our review of this issue. "Defendants are generally entitled to instructions that they have requested and that are supported by the evidence." *Commonwealth v. Hairston*, 84 A.3d 657, 668 (Pa. 2014) (internal citations omitted).

With respect to a *Kloiber* instruction,

a charge that a witness's identification should be viewed with caution is required where the eyewitness: (1) did not have an opportunity to clearly view the defendant; (2) equivocated on the identification of the defendant; or (3) had a problem making an identification in the past. Where an eyewitness has had protracted and unobstructed views of the defendant and consistently identified the defendant throughout the investigation and at trial, there is no need for a **Kloiber** instruction. When the witness already knows the defendant, this prior familiarity creates an independent basis for the witness's in-court identification of the defendant . . ..

**Commonwealth v. Ali**, 10 A.3d 282, 303 (Pa. 2010) (internal citations and quotation marks omitted).

Davis asserts that the victim "failed to provide the kind of evidentiary specificity that was good enough to convict [him] . . .." Davis's Brief at 8. Davis notes that trial counsel did request a **Kloiber** instruction, the trial court denied the request, and trial counsel then accepted the trial court's reading of an alternate instruction concerning identification testimony. **See id**. at 9. He concludes that trial counsel was ineffective for accepting the trial court's decision not to issue a **Kloiber** instruction and failing to the object to the jury charge as given by the trial court. **See id**.

The PCRA court concluded this issue was meritless. The court noted that the evidence demonstrated that the victim had the opportunity to identify Davis, consistently identified Davis as the person who shot him, never identified another person, and unequivocally identified Davis at trial. **See** PCRA Court Opinion, 3/11/24, at 9-10. The court concluded there was no basis

for trial counsel to have requested, or for the court to issue, a **_Kloiber_** instruction. **_See id_**. at 9-10.[5]

The PCRA court's findings are supported by the record and its conclusions are free of legal error. The record demonstrates the victim was familiar with Davis and, at the time of the shooting, there were no impediments to the victim's ability and opportunity to observe and identify. Specifically, the victim previously encountered Davis and codefendant Turner two weeks before the shooting. **_See_** N.T., 5/8/14, at 27-33. The previous encounter took place in the daytime, and the victim and Davis stood close to each other as they talked. **_See id_**. at 30-31. Nothing impeded the victim's view of Davis's face on that occasion. **_See id_**. at 31. The victim again confronted Davis and Turner immediately before the shooting. **_See id_**. at 35. While this encounter took place in the evening, streetlamps lit the area. **_See id_**. at 35, 40. The victim and Davis stood close to each other, and nothing impeded his view of Davis's face, or his clothing. **_See id_**. at 39, 42. During the shooting, the victim testified that he saw a flash coming from Davis's direction. **_See id_**. at 44. The victim unequivocally identified Davis as the

_____

[5] The PCRA court also noted that, in Davis's direct appeal, this Court rejected Davis's assertion that the victim lacked an opportunity to make a reliable identification. **_See_** PCRA Court Opinion, 3/11/24, at 9. In the direct appeal, we reviewed the denial of Davis's motion to suppress the victim's identification, and our scope of review was limited to the suppression record. **_See Davis_**, 2016 WL 3198210, at *11. Here, Davis's ineffectiveness claim based on **_Kloiber_** requires a review of the trial record. **_See Hairston_**, 84 A.3d at 668.

person he encountered two weeks before the shooting, on the night of the shooting, and as the person who shot him. *See id*. at 29, 34.

A review of trial counsel's request for a *Kloiber* instruction lends no additional support to Davis's claim. Trial counsel requested the *Kloiber* instruction because there was evidence that the victim: gave inconsistent statements about whether Davis was riding a bicycle or walking away from the victim when the shooting happened; was facing away from Davis when he was shot; looked at the photo array for fifteen minutes before first identifying Davis; identified Davis from a picture that did not match an officer's testimony that the victim described the suspects as having beards; and relayed physical descriptions of Davis that was inconsistent with his appearance, including the statement that the person who shot him had a gap in his teeth. *See* N.T., 5/9/14, at 45. Although these factors went to the credibility and weight of the victim's identification, they did not establish the need for a *Kloiber* instruction, which focuses on a witness's ability to make the identification. *See Commonwealth v. Brown*, 196 A.3d 130, 164 (Pa. 2018) (noting that a *Kloiber* instruction is not required where a witness was uncertain about or inconsistent with certain details of the crime); *Commonwealth v. Reid*, 99 A.3d 427, 449 (Pa. 2014) (noting that the need for a *Kloiber* instruction focuses on the ability of a witness to identify the defendant). The trial court, therefore, properly refused to issue a *Kloiber* instruction, and a further objection to the jury charge would have been futile. Thus, we conclude that the PCRA court properly dismissed Davis's claim that trial counsel should have

objected to the absence of a **Kloiber** instruction. **See Taylor**, 933 A.2d at 1042 ("Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim").

In his second issue, Davis asserts trial counsel was ineffective for failing to emphasize mitigating factors at the sentencing hearing.

A claim of ineffectiveness concerning a discretionary aspect of sentencing requires a petitioner to plead and prove prejudice. **See Commonwealth v. Presley**, 193 A.3d 436, 445 (Pa. Super. 2018). Specifically, the petitioner must plead facts demonstrating there was a reasonable likelihood that he would have obtained a more favorable result at sentencing. **See id**.

Davis contends that trial counsel failed to present evidence about his "mental disabilities" and that he was "a follower." Davis's Brief at 9. He contends this information was crucial to show that he was not someone who would initiate a criminal act and he only shot the victim on the orders of his codefendant, Turner. **See id**. at 9-10. He argues this information would also show that he was less culpable than Turner. **See id**. at 9.

The PCRA court concluded Davis failed to establish prejudice. **See** PCRA Court Opinion, 3/11/24, at 11. The court noted that it had ordered a presentence investigation report and a mental health evaluation, both of which it considered at the sentencing. **See id**. The court asserts it properly considered and weighed Davis's mental capacity and intellectual ability when imposing sentence. **See id**.

- 11 -

We initially note Davis did not point the PCRA court or this Court to any evidence or portion of the record that described the nature of Davis's mental disabilities and his proclivity to be a follower.[6] To the extent Davis is referring to information contained in either the presentence investigation or mental health reports prepared for sentencing, he failed to include either report as part of the certified record in this appeal. Therefore, Davis's claim of ineffectiveness was boilerplate and undeveloped, and the PCRA court properly dismissed it on that basis. **See Commonwealth v. Hall**, 872 A.2d 1177, 1188 (Pa. 2005); **see also** PCRA Court Opinion, 3/11/24, at 8.

In any event, this Court presumes that a sentencing court considers and weighs all relevant mitigating factors when the court has received a presentence investigation report. **See Commonwealth v. Sexton**, 222 A.3d 405, 422 (Pa. Super. 2019). As noted by the PCRA court, the record establishes that the court considered the presentence investigation and mental health reports before sentencing Davis. Specifically, at sentencing, the court heard arguments and evidence from Davis and the Commonwealth. The court then returned from a recess and noted it had considered the presentence investigation and mental health reports, as well as the evidence

---

[6] Moreover, although Davis suggests that he was less culpable than Turner, he provides no information about the sentence Turner received. We take notice that Turner received a lower aggregate sentence than Davis. **Cf. Commonwealth v. Turner**, 153 A.3d 1103, 2016 WL 3198231, at *5 (Pa. Super. 2016) (unpublished memorandum) (indicating that the trial court sentenced Turner to an aggregate term of eight to sixteen years of imprisonment).

and arguments presented by the parties. **See** N.T., 8/8/14, at 47. Before imposing sentence, the court noted that it considered Davis's criminal history, the sentencing guidelines, the need to protect the community, the impact on the victim, and stated, "[O]bviously, [this case is] a serious matter[,] and your rehabilitative needs . . . are also serious." **See id**. Thus, to the extent the PCRA court considered the merits of this claim and found no prejudice, the record supported the court's finding that it had and considered all relevant mitigation evidence. Davis offers no basis for finding an abuse of discretion or an error of law. Thus, we affirm the PCRA court's decision to dismiss this claim. **See Maxwell**, 232 A.3d at 744; **Jones**, 942 A.2d at 906.

In his third issue, Davis contends that trial counsel was ineffective for failing to submit for DNA or gunshot residue testing the black hoodie that police recovered from his residence at the time of his arrest. Davis's Brief at 10. He assert such testing was important to determine the accuracy of the victim's identification testimony. **See id**. at 11.

The PCRA court explained that there was no reasonable probability that the outcome of trial would have been different had counsel requested testing. **See** PCRA Court Opinion, 3/11/24, at 12. The court noted that the victim clearly identified Davis and the hoodie at trial, and the hoodie was recovered from Davis's home during his arrest. **See id**. The court added that Davis did not provide any legal or factual averments as to how trial counsel's decision was unreasonable. **See id**.

We affirm on a slightly different basis. With respect to the results of DNA testing, this Court has emphasized that "an absence of evidence is not evidence of absence." ***Commonwealth v. Murchison***, 294 A.3d 1251, 1262 (Pa. Super. 2023) (*en banc*). A negative test result does not necessary establish actual innocence in the context of a request for testing, ***see id***., nor a reasonable possibility that the verdict would have been different in the context of a claim of ineffective assistance of counsel.

Here, the record evidence linking Davis to the hoodie was uncontroverted. The victim gave a description of the hoodie to police, police recovered the hoodie from Davis's residence four days after the shooting, and at trial, the victim positively identified the hoodie as the one worn by Davis on the night of the shooting. ***See*** N.T., 5/8/14, at 42, 70-71, 177, 193. Furthermore, Davis has not established that pretrial testing on the hoodie, even if negative for his DNA and gunshot residue, would have had any meaningful probative or exculpatory value. He did not allege that the hoodie remained in a substantially similar condition as it was four days earlier, on the night of the shooting, nor did he allege that pretrial testing would have yielded a competent result that could be related back to the night of the shooting. Even if negative results returned for DNA and gunshot residue, and were admitted at trial, the Commonwealth would have been free to discredit that evidence based on the time between the shooting and the recovery of the hoodie. Based on this record, we conclude that Davis's allegation was far to

speculative as to establish prejudice resulting from trial counsel's failure to submit the hoodie for DNA and gunshot residue testing.

The record also supports the PCRA court's conclusion that Davis failed to rebut the presumption that trial counsel was effective. DNA and gunshot residue was not an issue at trial, and the absence of Davis's DNA and gunshot residue, as noted above, would carry little weight given the four days between the shooting and the recovery of the hoodie. If a test revealed the presence of gunshot residue, however, it would have bolstered the victim's testimony and complicated the defense's otherwise consistent attempt to impeach the victim's credibility on other grounds. Thus, testing would not have conferred a substantially better chance of a favorable outcome for the defense. ***See Commonwealth v. Collins***, 957 A.2d 237, 244 (Pa. 2008) (noting that a finding that a trial strategy lacked a reasonable basis is not warranted unless it can be concluded that the alternative not chosen offered a potential for success substantially greater than the course actually pursued).

For these reasons, we agree with the PCRA court that Davis did not plead or establish prejudice or the lack of a reasonable basis attendant his ineffective assistance of counsel claim concerning the failure to request DNA and gunshot residue tests of the hoodie. Therefore, Davis's third issue fails. ***See Maxwell***, 232 A.3d at 744; ***Jones***, 942 A.2d at 906.

In sum, our review reveals no basis to conclude that Davis's PCRA petition raised any genuine issues. Because the record supports the PCRA court's findings and its legal conclusions were not erroneous, we affirm the

court's decision to dismiss Davis's petition without a hearing. ***See Maxwell***, 232 A.3d at 744; ***Jones***, 942 A.2d at 906.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/30/2024